IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZANI STANISSIS, INDIVIDUALLY and AS REPRESENTATIVE OF THE ESTATE OF HER HUSBAND, CAVIN STANISSIS, et al., | § § § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:14-CV-2736-D |
| VS. | § § | |
| DYNCORP INTERNATIONAL LLC, et al., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and Texas law, each defendant moves

to dismiss plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(6) and 9(b), and

plaintiffs move for entry of an interim protective order. For the reasons that follow, the court

grants in part and denies in part defendants' motions to dismiss, denies without prejudice

plaintiffs' motion for entry of an interim protective order, and grants plaintiffs leave to

replead.

I

This is an action by several plaintiffs[1]—all citizens of the Republic of South Africa

---

[1]Plaintiffs, Zani Stanissis, Individually and as Representative of the Estate of Her Husband, Cavin Stanissis, Leon Botha, Andre Cronje, Johanna M. Cronje, Jaco Botes, Henry Bredenkamp, Dean Cappazario, Gideon Delport, Stefanus Du Preez, Carel Fourie, Gert

—against defendants DynCorp International LLC ("DynCorp") and Midlands Claim Administrators, Inc. ("Midlands").[2] Plaintiffs allege that DynCorp recruited them to provide training and assistance to local police and military personnel in Iraq and Afghanistan under DynCorp's contracts with the United States government.[3] Although recruited by DynCorp, each plaintiff signed a contract of employment with DynCorp FZ International ("DynCorp FZ"), an employee leasing company, who leased the employee back to DynCorp. Plaintiffs allege that, in recruiting them to work on DynCorp's projects in Iraq and Afghanistan, and separate from their employment contract with DynCorp FZ, DynCorp offered plaintiffs accident and disability insurance coverage through DynCorp's self-funded disability plan (the "Additional Benefits Plan" or the "Plan"). In exchange for coverage under the Additional Benefits Plan, plaintiffs waived their rights to sue DynCorp FZ for third-party tort liability based on injuries sustained in the scope of their employment. Plaintiffs allege that

_____

Hitzeroth, Arnoldus Kieser, George Kieser, Catharina Louw, Gerard Merrick, ChriZanstiaan Oosthuizen, Hady'n Potgieter, Danie Rademeyer, Chris Badenhorst, and Johann Steenberg.

[2]In their amended complaint, plaintiffs incorrectly name "Midlands Claim Administrators, Inc." as "Midlands Management Corporation." Plaintiffs seek leave to amend their complaint to correct this mistake. Because the court is granting plaintiffs leave to amend their complaint to address other pleading deficiencies, it grants this request as well.

[3]In deciding defendants' Rule 12(b)(6) motions, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

DynCorp self funded the Additional Benefits Plan; that DynCorp managed the Plan, sometimes with assistance from Midlands; and that, at all relevant times, DynCorp maintained the legal duty to administer benefits and pay claims as provided in the Plan.

While working for DynCorp, plaintiffs sustained serious injuries that they allege met the requirements of a disability under the Plan.  Each plaintiff's doctor confirmed his disabilities, and plaintiffs filed claims for disability insurance benefits with DynCorp.  According to plaintiffs' amended complaint, instead of paying the promised disability benefits, DynCorp attempted to steer plaintiffs away from receiving benefits by misrepresenting the nature of the insurance policy and misdirecting the proper claims handling and coverage for their disability claims.  For example, plaintiffs allege that DynCorp misrepresented that CIGNA—another insurance carrier—was the provider of their disability coverage, but the claims that they filed with CIGNA were denied.  Alternatively, plaintiffs allege that DynCorp assigned their claims for review either by the underwriter of another, unrelated insurance policy or by Midlands, and gave pretextual reasons for denying their claims based on endorsements and alternative policies that were never provided to them.  Concerning each plaintiff's disability claims, plaintiffs aver that defendants either misrepresented the existence and/or nature of the Additional Benefits Plan, intentionally steered plaintiffs to file incorrect claims with other entities when DynCorp knew it was the proper insurer of benefits, or wrongfully denied plaintiffs' claims by failing to provide them with the details of the Policy, or denied claims with no reasonable basis.

In their amended complaint, plaintiffs allege civil RICO claims, claims for violations

- 3 -

of Chapters 541 and 542 of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and common law claims for breach of contract, breach of the duty of good faith and fair dealing, fraud and fraudulent inducement, and promissory estoppel. Defendants move to dismiss under Rules 9(b) and 12(b)(6).[4]  Plaintiffs oppose the motions, and they move for entry of an interim protective order.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (alteration and some internal quotation marks omitted).  To survive defendants' motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

---

[4]DynCorp requests a hearing on its motion.  Without suggesting that the court will decline to hear oral argument on other motions filed in this case, the court denies this request. *See* N.D. Tex. Civ. R. 7.1(g).

a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

III

DynCorp initially moves to dismiss plaintiffs' claims on the ground that they signed employment contracts with DynCorp FZ in which they released all claims that they had against DynCorp.  Plaintiffs respond that the release on which DynCorp relies does not bar plaintiffs' claims because: (1) it violates Texas law and public policy; (2) DynCorp breached the agreement, thus invalidating the release; and (3) DynCorp fraudulently induced plaintiffs to sign the waivers.

A

Under federal and Texas law, release is an affirmative defense on which DynCorp will have the burden of proof at trial.  *See* Rule 8(c)(1) (listing release as affirmative defense that must be pleaded); *see also, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (citing *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 64 (Tex. App. 2005, pet. denied) ("A

- 5 -

release is designated as an affirmative defense[.]")).[5] "'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). Stated another way, DynCorp is not entitled to dismissal under Rule 12(b)(6) unless plaintiffs "ha[ve] pleaded [themselves] out of court by admitting to all of the elements of the defense." *Cochran*, 2011 WL 5604024, at *1 (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)). Under either federal or Texas law, the affirmative defense of release requires defendants to prove that plaintiffs signed releases that address the claims at issue. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 308 (5th Cir. 2011) (per curiam); *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *21 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (quoting *Westfield Dev., Inc. v. Rubashkin*, 2007 WL

---

[5]Federal law governs whether the release bars plaintiffs' RICO claim. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx 306, 308 (5th Cir. 2011) (per curiam) (citing *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002)). Texas law governs whether a Texas state-law claim has been released. *See, e.g., DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *21 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (applying Texas law to determine whether release barred plaintiffs' breach of contract claims).

491115, at *2 (Tex. App. Feb. 15, 2007, no pet.) (mem. op.)).

B

The court holds that DynCorp is not entitled to dismissal of plaintiffs' RICO or Texas state-law claims based on the affirmative defense of release, because it does not appear from the face of the amended complaint that these claims have been released. The only allegations of the amended complaint that relate to the releases state that "Plaintiffs waived their right to file suit against DynCorp FZ for third party tort liability claims based on injuries sustained in the scope of their employment," Am. Compl. ¶ 4; that "[n]o similar waiver of liability was created or existed as to [DynCorp], evidencing the parties' intent to address any disputes between [DynCorp] and Plaintiffs in an appropriate court of law," *id.*; and that "as part of the consideration provided by the [Additional Benefits Plan's] insurance benefits, each Plaintiff waived his right for third party tort suits against the DynCorp Entities," *id.* at ¶ 5. These allegations do not clearly demonstrate that plaintiffs' claims against DynCorp for RICO violations, or under Texas law relating to DynCorp's alleged failure to provide promised insurance coverage, are barred by release agreements between plaintiffs and DynCorp.

C

Even if the court goes beyond the allegations of the amended complaint and considers the release and the document in which it is found (which DynCorp has attached to its motion to dismiss), it is not apparent that plaintiffs have released their claims. The release states: "The Employee agrees to accept these insurance benefits as full satisfaction of any claim for

death, injury or disability against Employer and its affiliates." DynCorp's Mot., Ex. A.[6] The document that contains the release neither defines the term "Employer," as used in the release, nor indicates who signed the document, when it was signed, what contract it was attached to, or whether it was signed at all. It is unclear whether plaintiffs and DynCorp (as opposed to DynCorp FZ) ever signed a release, and, if they did, whether plaintiffs' present claims are covered by the release.[7]

Accordingly, DynCorp is not entitled to dismissal of plaintiffs' claims at the Rule 12(b)(6) stage based on the affirmative defense of release.

IV

DynCorp moves to dismiss plaintiffs' civil RICO claim for lack of standing.

A

"Under RICO, 'the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property[.]'" *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 621 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Thus '[t]o prevail in a RICO suit, a plaintiff must

---

[6]The court is citing this document this way because defendants did not, as N.D. Tex. Civ. R. 7.1(i)(1) requires, place their exhibits in an appendix.

[7]In support of its contention that plaintiffs' claims have been released, DynCorp cites two cases from Delaware in which courts enforced a similar release to bar claims against DynCorp. These cases are distinguishable. In both cases, plaintiffs sued DynCorp for personal injuries sustained on the job. *See Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Ct. Sept. 30, 2009); *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1159 (Del. 2010). Plaintiffs' claims in this suit arise out of defendants' alleged failure to pay disability benefits, not personal injuries sustained on the job.

demonstrate an injury to business or property." *Id.* (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); 18 U.S.C. § 1964(c)).  "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir.1998).  Rather, "[a] plaintiff may not sue under RICO unless he can show concrete financial loss."  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n.16 (5th Cir. 2003).

B

DynCorp contends that plaintiffs lack standing to assert their civil RICO claim because they have not suffered an "injury to business or property."  DynCorp argues that, although plaintiffs allege losses resulting from defendants' alleged RICO violations in the form of attorney's fees, out of pocket expenses, lost wages and other benefits, injury to their credit, and loss of their property interest in payments under the policies, all of plaintiffs' alleged losses derive from the underlying personal injuries they claim to have suffered in Iraq and Afghanistan while employed by DynCorp.  DynCorp maintains that because personal injuries are not compensable under RICO, plaintiffs lack standing.

Although the personal injuries that plaintiffs suffered while working for DynCorp were the underlying cause of their claims for disability benefits under the Additional Benefits Plan, plaintiffs are not presently seeking compensation for damages resulting from their personal injuries.  Rather, plaintiffs allege that

> [d]efendants' fraud directly and proximately caused injury to Plaintiffs who had a property interest in payments under their policies and/or fair adjudication of their claims, because it

- 9 -

> deprived them of disability benefits and because it caused them
> the expense of paying attorney fees and out of pocket expenses.
> The fraud further caused Plaintiffs to lose wages and other
> benefits from DynCorp, [and] caused injury to credit[.]

Am. Compl. ¶ 167.  Plaintiffs allege that defendants caused injury wholly separate and apart from their personal injuries—that defendants caused injury by refusing to pay them disability benefits to which they were entitled, which then caused additional financial hardships and losses.  Thus plaintiffs' claims are not for personal injuries.

DynCorp also posits that, even if plaintiffs' asserted injury is not one arising from plaintiffs' personal injuries, but rather from the alleged deprivation of plaintiffs' disability insurance benefits, the right to insurance benefits under Texas property law is a mere expectancy interest in an intangible property interest, which is insufficient to confer RICO standing.  DynCorp is correct that, in determining whether a plaintiff has alleged injury to property, courts look to state law to define this inherently state-law related term, *see Leach v. FDIC*, 860 F.2d 1266, 1274 n.14 (5th Cir. 1988) (citing *Reconstruction Fin. Corp. v. Beaver County*, 328 U.S. 204, 210 (1946)) (looking to Texas state law to determine whether lost value in stock constituted property interest in RICO action by minority shareholders against directors), and that insurance policies and insurance coverage rights are intangible property under Texas property law, *see Meadows v. Hartford Life Insurance Co.*, 2006 WL 2336913, at *9 n.12 (S.D. Tex. Aug. 10, 2006) (citing *Adams v. Great American Lloyd's Insurance Co.*, 891 S.W.2d 769, 772 (Tex. App. 1995, no writ)).  But plaintiffs are not alleging an injury to their right to receive future payments under the Additional Benefits

Plan. Rather, they allege that defendants injured them by refusing to pay insurance benefits to which plaintiffs were already entitled. Thus plaintiffs' alleged injuries are not injuries to expectancy interests in intangible property. Plaintiffs assert that they have suffered concrete financial losses in the form of lost money, including the disability benefits already owed to them, attorney's fees, and out of pocket expenses. This is sufficient to confer RICO standing. *See Trugreen Landcare*, 512 F.Supp.2d at 613 (holding that plaintiff's assertion that defendant caused her to lose existing contracts constituted concrete financial loss sufficient to confer RICO standing); *see also Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 256-58 & n.2 (3d Cir. 2007) (holding that plaintiff had standing to bring RICO claim against defendant for discontinued payment of disability benefits where defendant's refusal to pay resulted in plaintiff's having to sell his home and personal property below fair market value and incurring fees and penalties from the IRS, which constituted injuries to property for RICO purposes); *Miller v. York Risk Servs. Grp.*, 2013 WL 6442764, at *3-4 (D. Ariz. Dec. 9, 2013) (holding that plaintiffs' right to mandatory payment of workers' compensation benefits constituted property right, and defendant's denial of those benefits constituted injury to property sufficient to satisfy RICO standing requirement).

Accordingly, DynCorp is not entitled to dismissal based on lack of standing.

V

Defendants also move to dismiss plaintiffs' civil RICO claim on the basis that they have failed to satisfy the pleading requirements of Rules 8(a)(2), 9(b), and 12(b)(6).

A

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).  "'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"  *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.)).

Defendants contend that the amended complaint fails to satisfy the required elements of a civil RICO claim.  They argue, *inter alia*, that plaintiffs have failed to plead with particularity the predicate acts of mail and wire fraud, as required under Rule 9(b), entitling them to a dismissal under Rule 12(b)(6).

B

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]."  *Trugreen Landcare*, 512 F.Supp.2d at 623 (citations omitted).

- 12 -

> To state a claim for mail or wire fraud to support a RICO violation under § 1341 or § 1343, a plaintiff must establish three elements: "(1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) a use of the interstate mails or wires for the purpose of executing the scheme; and (3) a specific intent to defraud either by [d]evising, participating in, or abetting the scheme."

*Vanderbilt Mortg. & Fin., Inc. v. Flores*, 746 F.Supp.2d 819, 841 (S.D. Tex. 2010) (quoting *Hewlett-Packard Co. v. Byd:Sign, Inc.*, 2007 WL 275476, at *3 (E.D. Tex. Jan. 25, 2007)).

Rule 9(b) requires particularity in pleading the "circumstances constituting fraud." "This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990)). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)). "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally." *Id.* (citing Rule 9(b)).

The court concludes that plaintiffs' allegations regarding the predicate acts of mail fraud and wire fraud do not satisfy Rule 9(b). Plaintiffs allege that "[DynCorp] misrepresented that CIGNA provided coverage" for the disability benefits plan promised to plaintiffs, Am. Compl. ¶ 8; that defendants "misrepresented the existence of the policy," *id.*

- 13 -

at ¶ 10; and that DynCorp's representatives either misrepresented to plaintiffs that they were covered for disability insurance or concealed the existence of the disability benefits policy to prevent plaintiffs from filing claims, *see, e.g., id.* at ¶¶ 17, 24, 30.  Although plaintiffs allege that misrepresentations were made, they do not specify any of the other particulars that Rule 9(b) requires, such as when DynCorp's representatives made such representations, where the representations were made, or the specific identity of the person making the representations.  Plaintiffs do not even allege a general time period for when these representations allegedly occurred.  These allegations alone are insufficient to meet the specificity requirements of Rule 9(b).  *See, e.g., Moore v. Town N. Auto, Inc.*, 2014 WL 3396100, at *4 (N.D. Tex. July 11, 2014) (Fitzwater, C.J.) (holding that plaintiff did not meet Rule 9(b) requirements where he alleged misrepresentations, but did not specify other particulars required by Rule 9(b), such as which defendants made representations, when representations were made, and in what context they were made); *Shakeri v. ADT Sec. Servs., Inc.*, 2013 WL 6498268, at *3 (N.D. Tex. Dec. 11, 2013) (Fitzwater, C.J.) (same); *cf. Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (holding that plaintiff satisfied Rule 9(b) where it alleged specifically who made misrepresentations, when they made them, and what they said).

Accordingly, the court concludes that plaintiffs have failed to satisfy the requirements of Rule 9(b), and it grants defendants' motions to dismiss plaintiffs' civil RICO claim.[8]

---

[8]Because the court concludes that plaintiffs have not met the requirements of Rule 9(b), it need not consider defendants' remaining grounds for dismissal of plaintiffs' civil

VI

Plaintiffs also allege a RICO conspiracy claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]." "To prove a RICO conspiracy, [plaintiffs] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *Trugreen Landcare*, 512 F.Supp.2d at 625 n.11 (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)). "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity[.]" *Id.* If the amended complaint is insufficient to enable the court to draw the reasonable inference that there has been a pattern of racketeering activity, the same allegations cannot be the basis for a RICO conspiracy claim because there can be no agreement to engage in a substantive RICO offense that does not exist. Because the court has concluded that plaintiffs failed to sufficiently allege the predicate acts necessary to find racketeering activity, the court dismisses plaintiffs' RICO conspiracy claim for failure to state a claim on which relief can be granted. *See Orthoflex*, 2012 WL 2864510, at *4 (citing *Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) (Boyle, J.) ("Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.")).

---

RICO claim.

VII

The court now turns to defendants' motions to dismiss plaintiffs' claims for violations of Chapters 541 and 542 of the Texas Insurance Code and the DTPA.

A

Defendants move to dismiss plaintiffs' statutory claims, arguing that Texas law does not apply. Alternatively, they maintain that they are not subject to Chapters 541 and 542 of the Texas Insurance Code because they are not insurers, as defined in the statute; that plaintiffs' allegations fail to state claims under the Texas Insurance Code; and that two of the plaintiffs' claims are facially untimely.[9]

B

Defendants maintains that Texas law does not apply to plaintiffs' Texas statutory causes of action. Plaintiffs respond that, because information beyond the complaint is necessary to determine the applicable law, the court should decline to conduct choice-of-law analysis at this stage. Alternatively, they contend that Texas law does apply to their claims.

To decide whether Texas law controls, the court applies the choice-of-law rules of Texas, the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

---

[9]In support of its motion to dismiss, Midlands attaches the affidavit of Mary Ann Camp, Midlands' Supervisor of Claims. In deciding a motion to dismiss, the court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund*, 594 F.3d at 387. Camp's affidavit is neither attached to the amended complaint nor referenced in the amended complaint. Accordingly, the court has not considered the affidavit in deciding defendants' motions.

(1941).   "It is well settled that '[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary.'" *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *11 (N.D. Tex. June 5, 2007) (Fitzwater, J.) (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)).   "In that case, the court would simply apply forum law to the dispute." *Id.*   "Under Texas law, the burden is on the party asserting the application of foreign law to first show the existence of a true conflict of laws and then to demonstrate which law should apply based on state contacts to the asserted claims." *Siragusa v. Arnold*, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013) (Lynn, J.) (citing *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App. 2004, no pet.)); *see also Sulak v. Am. Eurocopter Corp.*, 901 F.Supp.2d 834, 841 (N.D. Tex. 2012) (Means, J.) ("The party asserting a conflict with Texas substantive law must demonstrate the existence of a true conflict."); *In re Soporex, Inc.*, 446 B.R. 750, 765 (Bankr. N.D. Tex. 2011) ("[T]he burden is on the party asserting the application of foreign law to show the existence of a conflict, and then demonstrate which law should apply.   In the absence of sufficient proof, the court presumes that the foreign law is the same as the law of Texas.") (citations omitted).

Defendants contend that Texas law does not apply because, "[i]n this case, South African plaintiffs, working for a Dubai company, and performing work in the Middle East, have sued [DynCorp], a limited liability company organized under Delaware law, and headquartered in Virginia." Ds. Mot. 14-15.   But defendants have neither identified another jurisdiction whose law they contend should be applied to plaintiffs' claims, nor demonstrated a conflict between the law of another jurisdiction and of Texas.   *See In re First RepublicBank*

- 17 -

*Sec. Litig.*, 1989 WL 108795, at *10 (N.D. Tex. Aug. 1, 1989) (Sanders, J.). Because defendants have not met their burden to show the existence of a true conflict of laws, the court presumes that any potentially applicable foreign law is the same as the law of Texas, and will apply Texas substantive law to plaintiffs' claims. Accordingly, the court denies defendants' motion to dismiss on this basis.

C

Defendants move to dismiss plaintiffs' statutory causes of action under the Texas Insurance Code and the DTPA on the ground that defendants are neither insurers nor are they in the business of insurance, as required to pursue a claim under Chapters 541 and 542 of the Texas Insurance Code.[10]

Chapter 541 applies to "an individual, a corporation, association, [or] partnership . . . engaged in the business of insurance." Tex. Ins. Code Ann. § 541.002 (West 2005). Chapter 542 applies only to "insurer[s] authorized to engage in business as an insurance company or to provide insurance in [Texas]." Tex. Ins. Code Ann. § 542.052 (West 2009). Plaintiffs contend that, because DynCorp is the provider of a self-funded disability insurance plan, it is in the business of insurance under Texas law and is thus subject to the Texas Insurance Code. Concerning Midlands, plaintiffs argue that because Midlands was engaged in handling

---

[10]The DTPA enables consumers to pursue claims for violations of Chapter 541 of the Texas Insurance Code. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(4) (West 2005). Because the allegations that form the basis of plaintiffs' DTPA claims are identical to those that form the basis of their Chapter 541 claim, the court's conclusion regarding plaintiffs' Chapter 541 claim applies equally to plaintiffs' DTPA claim.

- 18 -

plaintiffs' claims under the Plan, it was also engaged in the business of insurance. The court disagrees.

The Texas Supreme Court has held that, although private self-funded employee benefit plans operate like insurers, they are not regulated like insurance companies and are not engaged in the business of insurance for purposes of the Texas Insurance Code. *See Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848-49 (Tex. 2012) (holding that private self-funded benefit plans are not engaged in the "business of insurance" because the statutory provision defining what it means to be engaged in the business of insurance was not intended to encompass self-funded employee health-benefit plans). Thus the mere fact that DynCorp is a provider of a self-funded disability insurance plan is insufficient to qualify it as an insurer under Chapter 541. Further, nowhere in the amended complaint do plaintiffs allege that either Midlands or DynCorp was *authorized* to engage in business as an insurance company or provide insurance in Texas, as is required for Chapter 542 to apply. Plaintiffs have therefore failed to allege sufficient facts to enable the court to draw the reasonable inference that either DynCorp or Midlands is an insurer for purposes of the Texas Insurance Code. Defendants' motions to dismiss plaintiffs' claims for violations of the Texas Insurance Code and DTPA are therefore granted.[11]

---

[11]Because the court concludes that plaintiffs' Texas Insurance Code and DTPA claims must be dismissed on the basis that defendants are not insurers, the court need not consider defendants' remaining arguments for dismissal of plaintiffs' statutory causes of action.

VIII

The court now considers DynCorp's Rule 12(b)(6) motion to dismiss plaintiffs' breach of contract claim.

DynCorp argues that plaintiffs' breach of contract claim must be dismissed because they have not alleged that a contract existed between each plaintiff and DynCorp. "Under Texas law, a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emp'ees*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA,* 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law)). Plaintiffs allege that, although they were recruited by DynCorp, they signed their written contracts of employment with DynCorp FZ, who then leased them to DynCorp. Plaintiffs also allege that, in consideration for their employment, DynCorp promised to provide personal accident insurance, a promise explicitly set forth in a document attached to their employment contract with DynCorp FZ and titled "Attachment A." The only contracts plaintiffs allege they signed are their employment contracts with DynCorp FZ. And although plaintiffs allege that DynCorp made promises to induce them to agree to employment, nowhere in their amended complaint do they allege that they entered into a contractual relationship with DynCorp.

Because plaintiffs have failed to allege the existence of valid contracts between plaintiffs and DynCorp, the court grants DynCorp's motion to dismiss plaintiffs' breach of

contract claim.

## IX

DynCorp moves to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing, contending that it did not owe plaintiffs a duty of good faith and fair dealing because it was not an insurer.

"The Texas Supreme Court has held that an insurer owes an insured a duty of good faith and fair dealing because of the special relationship arising out of the insurance contract." *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1423 (N.D. Tex. 1996) (Kendall, J.) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988)). "Absent an insurance contract, there is no 'special relationship' and no duty of good faith and fair dealing." *Ingram v. Beneficial Fin., Inc.*, 2015 WL 1443110, at *6 (N.D. Tex. Mar. 30, 2015) (Lindsay, J.) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994)). Therefore, to plead a claim for breach of the duty of good faith and fair dealing, plaintiffs must allege the existence of a valid insurance contract. *Id.* As already discussed, plaintiffs have failed to allege the existence of valid contracts between plaintiffs and DynCorp, much less the existence of a valid insurance contract. Because the court cannot reasonably infer from the amended complaint that valid insurance contracts existed between plaintiffs and DynCorp, the court grants DynCorp's motion to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing.

X

Defendants move to dismiss plaintiffs' claims for fraud and fraudulent inducement, as well as plaintiffs' claims for punitive damages based on defendants' allegedly fraudulent conduct, on the ground, *inter alia*, that plaintiffs have failed to plead fraud with the specificity that Rule 9(b) requires. Plaintiffs' common law fraud claims arise out of the same conduct that plaintiffs allege constitute mail fraud and wire fraud to support their RICO claims. As discussed *supra* at § V(B), plaintiffs have failed to plead fraud with sufficient specificity to satisfy the requirements of Rule 9(b). The court therefore grants defendants' motion to dismiss plaintiffs' common law causes of action based on fraud or fraudulent inducement, as well as plaintiffs' claims for punitive damages.

XI

DynCorp moves to dismiss plaintiffs' claim for promissory estoppel, contending that plaintiffs have failed to plead factual allegations showing that DynCorp made any promise, or that plaintiffs substantially relied on a promise made by DynCorp.

"Under Texas law, the elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the [promisee]." *Miller v. KFC Corp.*, 1999 WL 820389, at *2 (N.D. Tex. Oct. 13, 1999) (Fitzwater, J.) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996) (Texas law); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). DynCorp has challenged the sufficiency of plaintiffs' allegations with respect to the first and third elements. Plaintiffs allege in the amended complaint that, in consideration for their

- 22 -

employment, DynCorp promised to provide them personal accident insurance for any injuries sustained on the job; that DynCorp representatives promised them that the insurance provided would cover their salary losses if they were seriously injured; and that this promise was a significant inducement in their decision to go to work for DynCorp in a dangerous zone overseas, because workers' compensation alone would not cover lost income in the event of a serious injury.  These allegations are sufficient to permit the court to draw the reasonable inference that DynCorp made a promise to plaintiffs on which they detrimentally relied.  The amended complaint states a claim for promissory estoppel, and DynCorp's motion to dismiss plaintiffs' promissory estoppel claim is denied.

XII

The court now considers plaintiffs' motion for entry of an interim protective order.

A

Plaintiffs move the court to enter a protective order to permit the production of documents that defendants might otherwise be reluctant to produce because they contain confidential information or trade secrets.  Plaintiffs also request that the court include in the protective order a provision that permits limited sharing of discovery documents with like-situated parties and courts overseeing such litigation.  Defendants oppose the motion.  First, they contend the motion is premature because their motions to dismiss are pending. Second, they posit that, absent evidence that there are other similarly situated plaintiffs who require access to discovery documents, implementing a sharing provision is similarly premature.

B

Rule 26(c)(7) provides: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that the burden is upon the movant to show the necessity of its issuance[.]" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (internal quotation marks omitted) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978), and citing 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2035, at 483-86 (2d ed. 1994)). "'Good cause' exists when justice requires the protection of 'a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003) (quoting *Landry*, 901 F.2d at 435).

The court denies plaintiffs' motion for protective order without prejudice as premature, because there is no indication at this stage of the litigation that such a protective order is necessary. There is no indication in plaintiffs' motion, in defendants' response, or in any other part of the record that indicates that defendants have been reluctant to produce relevant documentary discovery due to concerns about confidential or trade secret information. Nor is there any suggestion that there are other similarly situated plaintiffs who require access to discovery documents, and therefore that there is good cause to implement

- 24 -

a sharing provision, as plaintiffs propose.

The court therefore denies without prejudice plaintiffs' motion for entry of an interim protective order.

## XIII

Although the court is dismissing some of plaintiffs' claims, it will permit them to replead.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (citation and internal quotation marks omitted).  Because plaintiffs have not stated that they cannot, or are unwilling to, cure the remaining defects that the court has identified, the court grants them 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\*   \*   \*

For the reasons explained, defendants' motions to dismiss under Rules 9(b) and 12(b)(6) are granted in part and denied in part, plaintiffs' motion for entry of an interim protective order is denied without prejudice, and plaintiffs are granted leave to replead.

**SO ORDERED**.

April 29, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE