IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZANI STANISSIS, INDIVIDUALLY | § | |
| and AS REPRESENTATIVE OF THE | § | |
| ESTATE OF HER HUSBAND, CAVIN | § | |
| STANISSIS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:14-CV-2736-D |
| VS. | § | (Consolidated with Civil Action |
| | § | No. 3:15- CV-2026-D) |
| | § | |
| DYNCORP INTERNATIONAL LLC, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In *Stanissis v. Dyncorp International LLC*, 2015 WL 1931417, at *1 (N.D. Tex. Apr. 29, 2015) (Fitzwater, J.) ("*Stanissis I*"), the court granted in part and denied in part the motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) of defendants DynCorp International LLC ("DynCorp") and Midlands Claim Administrators, Inc. ("Midlands"), held that the amended complaint stated a claim for promissory estoppel, dismissed plaintiffs' remaining claims,[1] and granted plaintiffs leave to replead.  Plaintiffs have amended their complaint, and defendants move anew to dismiss under Rules 12(b)(6) and 9(b).  For the

---

[1]The court dismissed plaintiffs' claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, Chapters 541 and 542 of the Texas Insurance Code, and the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and plaintiffs' common law claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, and fraudulent inducement.  *See Stanissis I*, 2015 WL 1931417, at *5-11.

reasons that follow, the court grants Midlands' motion to dismiss and grants in part and denies in part DynCorp's motion to dismiss.

I

Because the relevant background facts are set out in *Stanissis I*, *see id.* at *1-2, the court will limit its discussion to what is necessary to understand today's decision. Plaintiffs[2] allege that DynCorp recruited them to work on DynCorp's projects in Iraq and Afghanistan. Although recruited by DynCorp, each plaintiff signed a contract of employment with DynCorp FZ International ("DynCorp FZ"), an employee leasing company, who leased the employee back to DynCorp. Plaintiffs allege that, in recruiting them, and separate from their employment contracts with DynCorp FZ, DynCorp offered them accident and disability insurance coverage through DynCorp's Additional Benefits Plan (the "Plan"), which is explicitly set forth in Attachment A to their employment contracts with DynCorp FZ. Plaintiffs allege that this offer was a significant inducement to their decisions to go to work for DynCorp overseas. In exchange for Plan coverage, plaintiffs waived their rights to sue DynCorp for third-party tort liability based on injuries they sustained within the scope of their employment. Plaintiffs allege that DynCorp self-funded the Plan, and that, at all relevant times, DynCorp maintained the legal duty to administer benefits and pay claims as

--------

[2]The plaintiffs are Zani Stanissis, individually and as representative of the estate of her husband, Cavin Stanissis, Leon Botha, Andre Cronje, Johanna M. Cronje, Jaco Botes, Henry Bredenkamp, Dean Capazorio, Gideon Delport, Stefanus Du Preez, Carel Fourie, Gert Hitzeroth, Arnoldus Kieser, George Kieser, Catharina Louw, Gerard Merrick, Christiaan Oosthuizen, Hady'n Potgieter, Danie Rademeyer, Chris Badenhorst, and Johann Steenberg.

provided in the Plan.

Plaintiffs assert that, while working for DynCorp, they sustained serious injuries that met the requirements of a disability under the Plan, and they filed claims for disability insurance benefits with DynCorp. They allege that, instead of paying the promised disability benefits, DynCorp attempted to steer them away from receiving benefits by misrepresenting the nature of the coverage under the Plan; DynCorp misdirected the proper claims handling and coverage for their disability claims by misrepresenting that CIGNA Worldwide Insurance Company ("CIGNA") was the provider of their disability coverage, even though CIGNA only provided health and medical insurance, resulting in the denial of their claims; and as to claims that CIGNA did not deny, DynCorp forwarded the claims to insurers, insurance brokers, claims handlers, or underwriters who denied the claims under a Lloyd's insurance policy, even though DynCorp knew that Lloyd's was not the proper insurer for plaintiffs' claims and that the Lloyd's policy was significantly narrower than the Plan's disability coverage.

In their second amended complaint, all plaintiffs allege claims against DynCorp for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011), and common law claims for breach of contract, breach of the duty of good faith and fair dealing, punitive damages, fraud, fraudulent inducement, promissory estoppel, and negligent

misrepresentation.[3]  Plaintiff George Kieser ("G. Kieser") asserts a claim against Midlands for negligent misrepresentation.  Defendants move to dismiss under Rules 12(b)(6) and 9(b).[4] Plaintiffs oppose the motions.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' [second] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (alteration and some internal quotation marks omitted).  To survive defendants' motions to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

---

[3]In deciding defendants' Rule 12(b)(6) motions, the court construes the second amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[4]Midlands requests a hearing on its motion.  Without suggesting that the court will decline to hear oral argument on other motions filed in this case, the court denies this request. *See* N.D. Tex. Civ. R. 7.1(g).

662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court turns initially[5] to DynCorp's motion to dismiss plaintiffs' civil RICO claim.[6]

A

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).  "'Reduced to their

_____

[5]The court will first address plaintiffs' statutory claims and then address their common law claims in the order in which they are pleaded in the second amended complaint.

[6]The caption of plaintiffs' first cause of action is "Fraud in Violation of 18 U.S.C. §§ 1961, 1962, 1964 and 1965 against DynCorp International."  It is apparent from the specific allegations that plaintiffs are asserting a civil RICO claim based on mail fraud and wire fraud.

simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a

pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or

control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2

(N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462,

at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D.

Tex. Sept. 17, 2002) (Fitzwater, J.)).  DynCorp contends that the second amended complaint

fails to adequately plead the required elements of a civil RICO claim, entitling DynCorp to

a dismissal under Rule 12(b)(6).

B

The court will assume, without deciding, that plaintiffs have adequately pleaded all

other essential elements of a civil RICO claim and will focus on whether they have plausibly

pleaded the third element: the existence of an enterprise.

"RICO defines an enterprise as 'any individual, partnership, corporation, association

or other legal entity, and any union or group of individuals associated in fact although not

a legal entity.'" *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting

18 U.S.C. § 1961(4)).  An "association-in-fact enterprise is 'a group of persons associated

together for a common purpose of engaging in a course of conduct,'" and "'is proved by

evidence of an ongoing organization, formal or informal, and by evidence that the various

associates function as a continuing unit.'" *Boyle v. United States*, 556 U.S. 938, 945-46

(2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  An enterprise must

have a "structure," that is "a purpose, relationships among those associated with the

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* "An association-in-fact enterprise '(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Allstate Ins.*, 802 F.3d at 673 (quoting *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991)). "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" *Boyle*, 556 U.S. at 947 (quoting *Turkette*, 452 U.S. at 583). "For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise." *Id.* at 947 n.4.

Plaintiffs attempt to allege the existence of an association-in-fact enterprise consisting of DynCorp, DynCorp FZ, insurance-related entities (Midlands, Lloyd's, C.J. Coleman ("Coleman"), and CIGNA), and recruiting entities (MSC Global Recruitment, and World Wide Recruiting Company), or, alternatively, an enterprise consisting of DynCorp and any one of the other entities. Plaintiffs also assert that DynCorp and DynCorp FZ formed a RICO enterprise "[b]ecause they worked together regularly in adjusting and handling claims for personal accident insurance and DynCorp FZ functioned as a leasing employer for DynCorp." 2d Am. Compl. ¶ 197(a). And plaintiffs aver that "[e]ach enterprise was an organization which existed not only for the purpose of defrauding Plaintiffs of their disability

benefits, the enterprises engaged in other activities, such as the administration of disability claims and the examination of individuals claiming other benefits, and recruiting workers to Iraq and Afghanistan," and that "[t]he enterprises are common associations for the fraudulent scheme." *Id.* at ¶ 198. Plaintiffs also allege that Dyncorp, "acting in concert with one or more of the enterprises discussed above, refused to pay benefits due to the Plaintiffs under the Plan or misrepresented the entire existence of the benefits provided for under the Plan." *Id.* at ¶ 205.

DynCorp contends that plaintiffs "have alleged nothing more than what amounts only to an undefined and structureless 'RICO enterprise' consisting of [the above entities]." DynCorp Br. 10. The court agrees. That DynCorp regularly worked with DynCorp FZ, or the other entities, and/or that each entity committed the predicate acts, does not permit the court to draw the reasonable inference that these entities coordinated or "function[ed] as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Allstate Ins.*, 802 F.3d at 673 (citation omitted).[7] Other than making conclusory allegations, plaintiffs do not allege any facts that enable the court to draw the reasonable inference that the entities functioned as a continuing unit. Therefore, plaintiffs have not adequately pleaded a RICO enterprise. *See Tortuga Bay v. Arnold Dev.*, 20 F.3d 1170, 1994 WL 144779, at *2 (5th Cir. Apr. 7, 1994) (per curiam) (unpublished opinion) (citing *Montesano v. Seafirst*

---

[7]Although not dispositive, it is noteworthy that plaintiffs assert a civil RICO claim against only one entity (DynCorp), and not against any other entity that allegedly constituted part of the enterprise.

*Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)) ("The plaintiffs merely assert that all the [entities] were associated with the alleged enterprise. The establishment of a RICO enterprise must be pleaded using specific facts, however, and not merely conclusory allegations."); *Montesano*, 818 F.2d at 427 ("[P]laintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise."); *see also Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

Accordingly, the court concludes that plaintiffs have not pleaded a plausible civil RICO claim, and it grants DynCorp's motion to dismiss this claim.[8]

## IV

Plaintiffs also allege a RICO conspiracy claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]." "To prove a RICO conspiracy, [plaintiffs] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 625 n.11 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)). "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity[.]"

---

[8]Because plaintiffs' civil RICO claim must be dismissed on the ground that they have not adequately pleaded a RICO enterprise, the court need not consider the other grounds on which DynCorp relies to challenge this claim.

*Id.* Because the court concludes that plaintiffs have failed to plead a plausible civil RICO claim, it also dismisses plaintiffs' RICO conspiracy claim for failure to state a claim on which relief can be granted. *See Tortuga Bay*, 20 F.3d 1170, 1994 WL 144779, at *2 (citing *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)) ("Because nothing in the plaintiffs' complaint linked the various [alleged members of the RICO enterprise] together other than accusations of independent fraudulent acts, the plaintiffs' failed to allege a RICO enterprise and their claims under 18 U.S.C. § 1962 fail."); *Orthoflex*, 2012 WL 2864510, at *4 (citing *Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) (Boyle, J.) ("Because all other RICO claims have been dismissed, the RICO conspiracy must also be dismissed.")).

V

Plaintiffs also assert a claim against DynCorp for violations of the DTPA.

A

The DTPA provides consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2011); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury.

*Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012)

(Fitzwater, C.J.) (citing *Amstadt*, 919 S.W.2d at 649).

In *Stanissis I* the court dismissed plaintiffs' DTPA claim. *Stanissis I*, 2015 WL 1931417, at *8. Plaintiffs alleged in their amended complaint that DynCorp violated the Texas Insurance Code, which is actionable under the DTPA. The court concluded that plaintiffs had failed to allege sufficient facts to enable the court to draw the reasonable inference that DynCorp was an insurer for purposes of the Texas Insurance Code, compelling dismissal of both the Insurance Code and DTPA claims. *Id.* Plaintiffs allege in their second amended complaint that DynCorp directly violated four sections of the DTPA—Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (7), (9), and (24).

B

DynCorp moves to dismiss plaintiffs' DTPA claim on the ground, *inter alia*, that plaintiffs do not qualify as "consumers" within the meaning of the DTPA. "To have standing to pursue a DTPA cause of action, a plaintiff must be a consumer." *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 400 (Tex. App. 2000, no pet.) (citing *Flenniken v. Longview Bank & Tr. Co.*, 661 S.W.2d 705, 707 (Tex. 1983)). "The question of consumer status under the DTPA is question of law for the court to decide, unless there is a dispute concerning factual issues that create consumer status." *Id.* at 401 (citing *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. 1996, no writ)). The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services[.]" Tex. Bus. & Com. Code Ann. § 17.45(4).

The "goods or services" at issue are disability benefits. Because plaintiffs do not

- 11 -

maintain that they "sought to purchase" the benefits, and only contend that they did in fact "acquire by purchase" the benefits, the dispositive question is whether they have pleaded a facially plausible claim that they acquired the disability benefits by purchase.

## C

Plaintiffs contend that they are DTPA consumers because they are beneficiaries of disability benefits that DynCorp promised it would provide. "[O]ne may acquire goods or services that have been purchased by another for the plaintiff's benefit." *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1426 (5th Cir. 1992). "[The] DTPA does not require the consumer to be an actual purchaser or lessor of the goods or services, as long as the consumer is the beneficiary of those goods or services." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997) (citing *Kennedy v. Sale*, 689 S.W.2d 890 (Tex. 1985)). "When determining whether a third-party beneficiary qualifies as a consumer, courts have considered whether the third party was the primary intended beneficiary or if it derived only an incidental benefit." *Serv. Corp. Int'l v. Aragon*, 268 S.W.3d 112, 117 (Tex. App. 2008, pet. denied). In the employment context, for example, an employee is entitled to consumer status when the goods or services are purchased for the primary purpose of benefiting the employee. But when the goods or services are purchased for the primary purpose of benefiting the business, and any use or benefit extends to the employee only incidentally, the employee does not have standing to sue under the DTPA. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 408 (Tex. App. 1997, writ dism'd by agr.).

To qualify as consumer based on status as an intended beneficiary, another person

must have actually "purchased" the goods or services.  *See Wellborn*, 970 F.2d at 1426 ("[O]ne may acquire goods or services *that have been purchased* by another for the plaintiff's benefit.") (emphasis added).  "Purchase" is not defined in the DTPA, but courts have defined the term according to "its common and ordinary meaning, namely the '[t]ransmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration.'"  *Mellema v. Cargill, Inc.*, 1993 WL 58518, at *4 (Tex. App. Feb. 26, 1993, no writ) (quoting *Hall v. Bean*, 582 S.W.2d 263, 265 (Tex. App. 1979, no writ)); *see also Pennington v. HSBC Bank USA, Nat'l Ass'n*, 2011 WL 6739609, at *7 (W.D. Tex. Dec. 22, 2011) (citing *Hall*, 582 S.W.2d at 265) ("The purchase of services, in the context of the DTPA, has been defined as the actual transmission of services from one person to another by voluntary act or agreement, founded on valuable consideration."), *aff'd*, 493 Fed. Appx. 548 (5th Cir. 2012).

    As a threshold matter, the court notes that each case that holds that an intended beneficiary qualified as a DTPA consumer involves a consumer suing a third party—the *seller* of the goods or services that another person purchased for the consumer's benefit—and with whom the consumer did not have a contractual relationship.  In the present case, however, plaintiffs are suing DynCorp—the alleged *purchaser* of the goods or services—with whom they maintain they had an implied contractual relationship. Accordingly, it is not apparent how plaintiffs can qualify as DTPA consumers as intended beneficiaries.

    More important, in the cases that hold that an intended beneficiary qualified as a

consumer, someone actually purchased goods or services primarily for the benefit of the plaintiff. Plaintiffs do not allege, however, that DynCorp actually "purchased" disability insurance for them.[9] Rather, they assert that "DynCorp alleged it would purchase (or self-fund) [disability benefits] for the benefit of Plaintiffs" but failed to do so. Ps. Br. 16 (parenthesis in original). It is immaterial whether DynCorp promised to buy disability insurance from a third-party insurer or to self-fund payments to cover plaintiffs' disabilities. According to the second amended complaint, DynCorp did not actually fulfill the alleged promise, so there was no purchase—i.e., no actual transmission of property or services from DynCorp to another. *See Pennington*, 2011 WL 6739609, at *7; *Mellema*, 1993 WL 58518, at *4. The court therefore holds that plaintiffs have failed to plausibly plead that they qualify as DTPA consumers based on intended beneficiary status.

### D

Plaintiffs also contend that they are DTPA consumers because they directly "purchased the benefits by accepting the employment in Iraq or Afghanistan." Ps. Br. 16-17. But other than this conclusory assertion, plaintiffs do not explain how entering into an

---

[9]According to plaintiffs, DynCorp did purchase a Lloyd's insurance policy, but plaintiffs do not allege that they qualify as consumers on this basis. And even if they did, plaintiffs would only be incidental beneficiaries of the Lloyd's policy because they posit that "DynCorp purchased insurance from Lloyd's to cover its own losses for insurance payments" but "the insurance from Lloyd's only protected DynCorp (not Plaintiffs)." Ps. Br. 7-8 (parenthesis in original); *see also Rahlfs v. Wittke, Inc.*, 2004 WL 1283948, at *2 (N.D. Tex. June 10, 2004) (Robinson, J.) (quoting *Kennedy*, 689 S.W.2d at 892) ("When the purported consumer is an employee of the actual purchaser of goods or services, recent Texas cases hold that the employee has consumer status under the DTPA only when the employer purchases the goods or services 'primarily for the employee's benefit.'").

employment contract with DynCorp FZ qualifies as a "purchase" from DynCorp, and they cite no authority to support this proposition. Accordingly, plaintiffs have not pleaded sufficient facts to enable the court to draw the reasonable inference that they qualify as DTPA consumers. *See River Oaks Townhomes Owners' Ass'n v. Bunt*, 712 S.W.2d 529, 531 (Tex. App. 1986, writ ref'd n.r.e.) (citing *Reed v. Israel Nat'l Oil Co.*, 681 S.W.2d 228, 234 (Tex. App. 1984, no writ)) ("Under the DTPA, the plaintiff has the burden to prove all elements of his cause of action including that he was a consumer."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

Alternatively, the court cannot reasonably infer from the facts alleged that plaintiffs purchased disability benefits directly from DynCorp. To the extent that plaintiffs assert that they are DTPA consumers as a result of entering into employment contracts, "no case has ever held employees are 'consumers' under employment contracts." *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App. 1991, writ denied); *see, e.g., Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469, 473, 478 (Tex. App. 1997, writ denied) (explaining that former employee sued employer to recover benefits allegedly owed under employment contract and holding that employee was not a consumer because "[he] did not acquire by purchase or lease any tangible or real property" and "also did not purchase or lease for use any work, labor, or services[;]" rather, "[h]e entered into the [employment contract] to furnish services to [employer] for consideration"); *Figueroa v. West*, 902 S.W.2d 701, 707 (Tex. App. 1995, no writ) ("[Employee] produced no evidence that she was a consumer . . . [She] was an

- 15 -

employee.  She obtained work from [employer], not goods or services."); *Baker v. Mo. Pac. Truck Lines, Inc.*, 616 S.W.2d 389 (Tex. App. 1981, no writ).[10]

Moreover, even if plaintiffs' employment contracts do not preclude their consumer status, they have not sufficiently pleaded that they "purchased" any benefits from DynCorp. Plaintiffs maintain that their purchase took the form of services that they provided DynCorp. But the second amended complaint alleges that plaintiffs contracted to work for DynCorp FZ, and that DynCorp FZ contracted to work for DynCorp by leasing plaintiffs to DynCorp.  As pleaded, plaintiffs provided services to *DynCorp FZ*, within the course and scope of their employment, and *DynCorp FZ* provided services to DynCorp.  Plaintiffs do not allege that they provided any services to DynCorp beyond those that they owed under their contracts with DynCorp FZ, or that DynCorp received any services beyond those it was contractually owed by DynCorp FZ.  Accordingly, the court concludes that plaintiffs have not plausibly pleaded that they "purchased" disability benefits from DynCorp.

This is especially true for the plaintiffs who the court concludes *infra* at § IX(D) had decided to accept their employment with DynCorp FZ before DynCorp allegedly misrepresented to them that they would receive disability benefits.  It is well established that

_____

[10]Assuming that plaintiffs would argue that DynCorp was not their employer, and that the employment contract cases do not apply, it is notable that plaintiffs rely exclusively on two employer-employee cases to establish that they are DTPA consumers. *See* Ps. Br. 16-17 (citing *Gasch v. Hartford Accident & Indem. Co.*, 2006 WL 1281082, at *1 (S.D. Tex. May 5, 2006), *vacated*, 491 F.3d 278 (5th Cir. 2007); *Kennedy*, 689 S.W.2d 890).  In fact, plaintiffs do this throughout their briefing: they rely on employer-employee cases when it appears to help their case, and they distinguish employer-employee cases (on the basis that DynCorp was not their employer) when relying on these cases would be detrimental.

a truly free act is not a purchased good or service under the DTPA.  *See, e.g., Rayford v. Maselli*, 73 S.W.3d 410, 411 (Tex. App. 2002, no pet.) (holding that inmate who received free legal services was not consumer); *Tri-Legends Corp. v. Ticor Title Ins. Co.*, 889 S.W.2d 432, 441 (Tex. App. 1994, writ denied) (holding that plaintiff who was not charged for title company's services was not consumer); *Exxon Corp. v. Dunn*, 581 S.W.2d 500, 501 (Tex. App. 1979, no writ) (holding that automobile owner who was not charged for unsuccessful repair services was not consumer).

Because plaintiffs have not plausibly pleaded that they qualify as consumers under the DTPA, the court dismisses their DTPA claim.[11]

VI

Plaintiffs also assert a breach of contract claim against DynCorp.

A

"Under Texas law, a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA,* 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law)).  In *Stanissis I* the court dismissed plaintiffs' breach of contract claim, concluding that "[t]he only contracts plaintiffs allege they signed are their

_____

[11]Because the court is dismissing plaintiffs' DTPA claim on the ground that they are not DTPA consumers, it need not address DynCorp's other grounds for dismissing this claim.

employment contracts with DynCorp FZ," and that "although plaintiffs allege that DynCorp made promises to induce them to agree to employment, nowhere in their amended complaint do they allege that they entered into a contractual relationship with DynCorp." *Stanissis I*, 2015 WL 1931417, at *8-9. Plaintiffs allege in their second amended complaint that they entered into implied or oral contracts with DynCorp.

## B

DynCorp first moves to dismiss the breach of contract claim on the ground that plaintiffs have failed to sufficiently plead facts establishing the existence of an enforceable contract. DynCorp maintains that plaintiffs have not alleged that DynCorp intended to enter into a contract with them. "For there to be a valid contract, there must be '(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.'" *Erdman Co. v. USMD of Arlington GP, LLC*, 2011 WL 1356920, at *15 (N.D. Tex. Apr. 11, 2011) (Fitzwater, C.J.) (quoting *Prime Prods. v. S.S.I. Plastics*, 97 S.W.3d 631, 636 (Tex. App. 2002, pet. denied)). Because DynCorp only challenges whether plaintiffs have adequately alleged the elements of consent and a meeting of the minds, the court will not address whether plaintiffs have sufficiently pleaded the other necessary elements to state a facially plausible breach of contract claim.

"'The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind.'" *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v.*

*Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999, pet. denied)).   "[A] meeting of the minds refers to a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract."  *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 362 (5th Cir. 2013) (per curiam) (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App. 2010, pet. denied)).   "The essential terms must be defined 'with sufficient precision to enable the court to determine the obligations of the parties.'"   *Id.* (quoting *New Process Steel, L.P. v. Sharp Freight Sys.*, 2006 WL 947764, at *3 (Tex. App. Apr. 13, 2006, no pet.)).

The court concludes that plaintiffs have sufficiently alleged facts and circumstances surrounding the parties' conduct from which the court can reasonably infer mutual intent to contract.  *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("[A contract implied in fact] arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.").  Plaintiffs allege that DynCorp recruited them to work on its projects in Iraq and Afghanistan; DynCorp offered them disability benefits in exchange for their employment; DynCorp asked plaintiffs to confirm that they had received the Attachment A benefits; plaintiffs confirmed that they had received the Attachment A benefits; in exchange for the disability benefits, plaintiffs waived negligence claims for on-the-job injuries caused by DynCorp's negligence; plaintiffs worked on DynCorp's projects; and DynCorp used plaintiffs as borrowed employees for its own benefit.   Accordingly, the court denies DynCorp's motion to dismiss based on the ground that plaintiffs have not alleged facts

establishing an enforceable contract.[12]

## C

DynCorp moves to dismiss plaintiffs' breach of contract claim on the ground that plaintiffs' written employment contracts with DynCorp FZ preclude implied or oral contracts. First, DynCorp maintains that the disability benefits that plaintiffs allege are the subject matter of their implied contracts with DynCorp are set forth in plaintiffs' employment contracts with DynCorp FZ. Dyncorp posits that, because the express contracts cover the same subject matter as the alleged implied contracts, plaintiffs cannot recover under a quasi-contract theory. Second, DynCorp relies on the merger clause in each plaintiff's employment contract with DynCorp FZ, which states that the plaintiff has not relied upon any written or oral representation or statement other than the express terms in the written contract.

---

[12]Plaintiffs rely on *E–Z Mart Stores, Inc. v. Hale*, 883 S.W.2d 695 (Tex. App. 1994, writ denied), to support the existence of implied contracts for disability insurance between each plaintiff and DynCorp. In *E–Z Mart Stores* the court held that an implied contract existed between an employee and a self-insured employer (E–Z Mart) for worker's compensation benefits. *Id.* at 699. The court concluded that there was a mutual intent to contract because E–Z Mart posted a notice that stated that "all E–Z Mart employees are covered by Workmen's Compensation Ins. through E–Z Mart, Inc. Self Insurance Program. The Company has assumed the role of your Workmen's Comp. Insurance Company," and the employee continued to work for E–Z Mart after the notice was posted. *Id.* The court explained that the benefits program was just another form of compensation for the employee's services. *Id.* DynCorp maintains that *E–Z Mart Stores* is distinguishable because the plaintiff was employed by the defendant, and plaintiffs were never employed by DynCorp, and the defendant explicitly informed the plaintiff that it was self-insuring her benefits, which DynCorp never did. But even if *E–Z Mart Stores* is factually distinguishable, it is not necessary for plaintiffs to come within the facts of that case to plead a facially plausible implied contract claim. *E–Z Mart Stores* simply illustrates facts that have been deemed sufficient, not required, under Texas law.

DynCorp contends that the merger clause precludes each plaintiff from relying on an implied or oral contract with DynCorp for disability benefits when employed on a DynCorp project. Plaintiffs respond that because DynCorp is not a party to their employment contracts with DynCorp FZ, the employment contracts (including the merger clauses in them) do not preclude them from pursuing breach of implied contract claims against DynCorp.

"The existence of a valid, express contract that covers the subject matter of the parties' dispute generally precludes recovery under a quasi-contract theory." *Williams v. Colonial Bank, N.A.*, 199 Fed. Appx. 399, 403 (5th Cir. 2006) (per curiam) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)); *see also Craft v. John H. Harland Co.*, 2007 WL 2325590, at *8 (N.D. Tex. Aug. 14, 2007) (Fitzwater, J.) (citing *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished.")). But DynCorp has cited no cases, and the court has located none, that hold that this rule precludes a plaintiff from recovering on an implied contract theory against a defendant who is not alleged to be a party to the express contract that covers the subject matter of the parties' dispute.[13]   Nor has DynCorp shown that it can rely on the merger

---

[13]Plaintiffs allege in their second amended complaint that "DynCorp FZ act[ed] as the agents (expressed, implied, and apparent authority) for DynCorp," and that "DynCorp gave DynCorp FZ actual authority to act on its behalf verbally." 2d Am. Compl. ¶ 7.  Accepting these allegations as true and applying Texas agency law, the court could draw the reasonable inference that DynCorp *was* a party to plaintiffs' written employment contracts with DynCorp FZ. *See Abramson v. Am. Online, Inc.*, 393 F.Supp.2d 438, 440 (N.D. Tex. 2005) (Lynn, J.) (citing *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex. App. 1996, writ denied)) (explaining that, under Texas agency law, person is bound under agreement if

- 21 -

clauses in plaintiffs' employment contracts with DynCorp FZ, to which it was not a party.

Accordingly, DynCorp is not entitled to dismissal of plaintiffs' breach of contract claim on

the ground that the express employment contracts between plaintiffs and DynCorp FZ bar

the alleged implied contracts between plaintiffs and DynCorp.

D

DynCorp maintains that plaintiffs' breach of contract claim must be dismissed because

plaintiffs have not sufficiently pleaded the existence of an insurance contract.  But plaintiffs

do not base their breach of contract claim on an alleged insurance contract.  They first allege

the existence of an insurance contract in connection with their claim for breach of the duty

of good faith and fair dealing.  The court therefore declines to dismiss their breach of contract

claim on this basis.

E

Finally, DynCorp moves to dismiss plaintiffs' breach of contract claim on the ground

that it is barred by the statute of frauds.  Because the statute of frauds is an affirmative

---

she gave another person actual authority to sign the agreement on her behalf, conferred
apparent authority on another person, or ratified the agreement).  If an express agreement
governed the subject matter of the parties' dispute—here, the terms of plaintiffs' disability
benefits—plaintiffs would not be able to recover on a quantum meruit theory.  *See Williams*,
199 Fed. Appx. at 403. But neither side relies on an alleged agency relationship between
DynCorp and DynCorp FZ in briefing DynCorp's motion to dismiss.  Instead, both sides
assert that DynCorp was *not* a party to plaintiffs' employment contracts with DynCorp FZ,
thus appearing to argue against an agency theory.  Additionally, apart from conclusory
allegations, the second amended complaint lacks any facts that would allow the court to
reasonably infer the existence of such an agency relationship.  *See Iqbal*, 556 U.S. at 678
("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice.") (citation omitted).

defense, the court can only dismiss plaintiffs' breach of contract claim at the Rule 12(b)(6) stage if the "'affirmative defense appears clearly on the face of the pleadings.'" *Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 774 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  In other words, "the plaintiff[s] must normally plead [themselves] out of court."  *W. Fork Partners, L.P. v. Chesapeake Expl., L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)) (addressing statute of limitations defense).

The Texas statute of frauds provides that "an agreement which is not to be performed within one year from the date of making the agreement" must be in writing.  Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (West 2015).  DynCorp maintains that plaintiffs are basing their alleged implied or oral contracts on the terms of their employment contracts.  It points out that plaintiffs plead that DynCorp's promise to provide disability insurance is explicitly set forth in Attachment A to their employment contracts with DynCorp FZ, and that in the employment contracts, in exchange for the additional disability coverage, plaintiffs waived their right to sue DynCorp.  DynCorp argues that plaintiffs are alleging that their employment with DynCorp FZ is an element of their alleged implied or oral contracts with DynCorp, and it contends that the "Term of Contract" provision of each employment contract shows that the employment tenure of each plaintiff was for a period of at least one year.  DynCorp also relies on the employment contract of Catharina Louw ("Louw"), which was previously filed in this case.  And DynCorp maintains that the second amended complaint does not allege that

the tenure of each plaintiff's employment was shorter than one year.

The court cannot consider Louw's employment contract because it is not attached to the second amended complaint or to DynCorp's motion to dismiss. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). And even if the court could consider Louw's employment contract, it does not sufficiently show the employment tenure of the other plaintiffs.

Moreover, in Texas, there is a "general rule that, where the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year, the contract does not violate the statute." *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam) (citing *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex. 1974)). Because the second amended complaint does not allege facts that require the conclusion that plaintiffs' employment contracts with DynCorp FZ (or DynCorp) could not have been performed in a shorter period than one year, the statute of frauds affirmative defense does not appear on the face of the second amended complaint, and plaintiffs have not pleaded themselves out of court on their breach of implied or oral contract claim.

Accordingly, the court denies DynCorp's motion to dismiss plaintiffs' claim for breach of implied or oral contract on the basis that it is barred by the affirmative defense of the statute of frauds.

- 24 -

VII

DynCorp moves to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing.

A

"Under Texas law, there is a duty on the part of an insurer to deal fairly and in good faith with an insured in processing and paying claims. This duty arises from the inherent power imbalance between the insurer and the insured." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 806 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). "[A]n insurer breaches its common law duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered." *Id.* (quoting *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744, 747 (5th Cir. 2009) (per curiam) (Texas law)) (internal quotations, citations, and alterations omitted). "Within the duty of good faith is an insurer's obligation to conduct an adequate investigation of the claim." *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F.Supp.2d 814, 839 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 469 (Tex. App. 2005, no pet.)).

In *Stanissis I* the court held that plaintiffs had failed to allege sufficient facts to enable the court to draw the reasonable inference that DynCorp was an insurer for purposes of the Texas Insurance Code. *Stanissis I*, 2015 WL 1931417, at *8. The second amended complaint still alleges that plaintiffs' contracts with DynCorp were "contract[s] for

- 25 -

insurance," that DynCorp was "Plaintiffs' insurer," and that DynCorp breached its duty of good faith and fair dealing "by refusing to conduct a reasonable investigation and denying those insurance benefits." 2d Am. Compl. ¶ 210. But plaintiffs now maintain that DynCorp qualifies under Texas law as an insurer because it self-funded its insurance obligation, not that DynCorp is a licensed insurer subject to the Texas Insurance Code.

B

DynCorp first contends that plaintiffs' claim for breach of the duty of good faith and fair dealing must be dismissed because DynCorp is not an insurer and thus did not owe plaintiffs this duty. In *Texas Department of Insurance v. American National Insurance Co.*, 410 S.W.3d 843 (Tex. 2012), the Supreme Court of Texas indicated that employers who self-fund health-benefit plans for their employees might qualify as insurers outside the Texas Insurance Code. *See id.* at 848-49. In *American National* the court addressed whether an employer who self-funded health-benefit plans for its employees qualified as an insurer under the Texas Insurance Code. *Id.* at 848. The court explained that "[w]ithout question, self-funded employee health-benefit plans operate much like insurers," and "[t]heir activities not surprisingly then fit the definitions of 'insurer' and 'business of insurance' found in the [Insurance Code]." *Id.* But the court also concluded that employers who self-fund health-benefit plans are not regulated like insurance companies and thus do not comport with the Insurance Code's purpose "to extend the state's regulatory authority to those conducting the business of insurance in the state without authorization." *Id.* at 849. The court therefore held that employers who self-fund health-benefit plans for their employees are not insurers under

- 26 -

the Texas Insurance Code.  *Id.*

Plaintiffs rely on *E–Z Mart Stores, Inc. v. Hale*, 883 S.W.2d 695 (Tex. App. 1994, writ denied), in which a Texas court of appeals addressed whether an employer (E–Z Mart), "by its decision to self-insure its employees, placed itself under the same duty of good faith and fair dealing as that imposed upon a formal insurance company." *Id.* at 700.  The court held that E–Z Mart *was* an insurer subject to this duty because (1) the employee alleged a violation of this common law duty, rather than a violation of the Insurance Code, and (2) "E–Z Mart made the unqualified decision to place itself in the position of an insurer" because "when E–Z Mart informed its employees that it had disposed of its insurance coverage for its employees, E–Z Mart expressly stated that '[t]he Company has assumed the role of your Workmen's Comp. Insurance Company.'"  *Id.* (alteration in original).

In the present case, plaintiffs do not plead a violation of the Texas Insurance Code. And although plaintiffs do not allege that DynCorp specifically told them that it was self-insuring their benefits, they do assert that DynCorp promised it would provide the disability benefits provided in Attachment A.  Attachment A does not state that DynCorp provides benefits by purchasing insurance from an insurer; rather, it only states that DynCorp "pays the full cost of your coverage." 2d Am. Compl. Ex. 1, at 3.  Accordingly, viewed in the light most favorable to plaintiffs, they have plausibly pleaded that DynCorp "place[d] itself in the position of an insurer." *E–Z Mart Stores*, 883 S.W.2d at 700.  Plaintiffs have therefore pleaded sufficient facts to enable the court to draw the reasonable inference that DynCorp is an insurer to whom the duty of good faith and fair dealing applies under Texas law.

DynCorp's motion to dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing on the basis that DynCorp is not an insurer is denied.

### C

DynCorp next maintains that plaintiffs' breach of the duty of good faith and fair dealing claim must be dismissed because DynCorp did not investigate or deny plaintiffs' disability claims.  It asserts that the denial letters in "Exhibit 2 to the [second amended] complaint show[] that actual insurers and their brokers and third party administrators, not [DynCorp], investigated and denied any claims."  DynCorp Br. 19.  Because DynCorp can breach its duty of good faith and fair dealing by inadequately investigating plaintiffs' claims, *see Vought Aircraft Industries*, 729 F.Supp.2d at 839, and DynCorp asserts that it did not investigate plaintiffs' disability claims, DynCorp it is not entitled to dismissal of plaintiffs' claim for breach of the duty of good faith and fair dealing on the ground that it did not investigate and deny plaintiffs' disability claims.

### D

Finally, DynCorp contends that plaintiffs' breach of the duty of good faith and fair dealing claim fails for all the same reasons that their breach of contract claim fails.  Given the disposition of DynCorp's motion to dismiss plaintiffs' breach of contract claim, *see supra* at § VI, DynCorp is not entitled to dismissal of plaintiffs' claim for breach of the duty of good faith and fair dealing on this basis.

- 28 -

VIII

DynCorp maintains that plaintiffs' claim for punitive damages must be dismissed for two reasons: first, punitive damages is not a stand-alone cause of action, and, second, plaintiffs do not allege the specific intent of malice.  Plaintiffs do not respond to this argument.

The second amended complaint alleges that DynCorp "acted fraudulently and with malice (as that term is legally defined) in denying Plaintiffs' claim for coverage benefits." 2d Am. Compl. ¶ 211.  Plaintiffs appear to seek exemplary damages under the Texas Civil Practice and Remedies Code.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 2015) ("[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."); *see also id.* at § 41.001(5) ("'Exemplary damages' includes punitive damages.").

A cause of action for punitive damages cannot be brought as a stand-alone claim.  *See Everett v. TK Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App. 2005, no pet.) (citing *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) (per curiam); Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a) (Vernon Supp. 2004-05)) (explaining that plaintiff brought cause of action for exemplary damages, and concluding that "[a]n exemplary damages claim will not stand alone; it depends on some pleaded liability claim"); *see also Villaje Del Rio, Ltd. v. Colina Del Rio, LP*, 2008 WL 4178156, at *5 (W.D. Tex. Sept. 5, 2008) (citing *Sulzer Carbomedics v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 461 (5th Cir.

- 29 -

2001); *Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995)) (stating that "exemplary damages are merely a remedy and not a cause of action"). Accordingly, the court concludes that plaintiffs' claim for punitive damages must be dismissed.

In addition to pleading a separate claim for punitive damages, the second amended complaint requests an award of punitive damages in the prayer for relief. The court declines to hold that punitive damages are not available as a remedy because the court concludes below that plaintiffs have sufficiently alleged a fraud claim for some plaintiffs. *See McDonald v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2122168, at *9 (N.D. Tex. June 11, 2012) (Boyle, J.) (explaining that plaintiffs' separate claim for exemplary damages "[is] more properly considered [a] remed[y] than [a] cause[] of action," and denying defendants' motion to dismiss "any request for remedies"). Harm that results from fraud can support such an award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).

Accordingly, the court dismisses plaintiffs' cause of action for punitive damages but does not dismiss plaintiffs' request for punitive damages as a remedy.

## IX

DynCorp moves to dismiss plaintiffs' fraud claim.

## A

DynCorp maintains that the second amended complaint fails to satisfy the required elements of a fraud claim. It argues, *inter alia*, that plaintiffs have failed to plead fraud with the specificity that Rule 9(b) requires, entitling it to a dismissal under Rule 12(b)(6). The elements of common law fraud in Texas are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C. J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law) (citations omitted)).[14]   "To prove fraud based on a promise of future performance, a plaintiff must show that the person making the promise had no intention of performing at the time he made the promise." *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *6 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (citing *Fluorine On Call, Ltd.*, 380 F.3d at 858).

"[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) (citations omitted). "Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making

---

[14]DynCorp does not specifically challenge the third element—that the speaker either knew it was false, or made it without knowledge of its truth—or the sixth element—that plaintiffs were injured as a result. Accordingly, the court will assume that these elements are satisfied.

- 31 -

the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343

F.3d at 724) (internal quotation marks omitted).  More colloquially, plaintiffs must plead the

"who, what, when, where, and how" of the fraud.  *Williams v. Bell Helicopter Textron, Inc.*,

417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA*

*Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  Because Rule 9(b) must be "read in

conjunction with [Rule] 8 which requires only a short and plain statement of the claim

showing that the pleader is entitled to relief," "punctilious pleading detail" is not required.

*Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting

*Landry v. Air Lines Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990))

(internal quotation marks omitted).  "The court's key concern in assessing a complaint under

Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether

the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar*

*& Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (quoting

*FDIC v. Gaubert*, No. 3-90-1196-D, slip op. at 7 (N.D. Tex. Sept. 4, 1990) (Fitzwater, J.)).

B

Plaintiffs allege that DynCorp made four material, false representations.  First,

plaintiffs assert that DynCorp misrepresented that plaintiffs would be covered for disability

benefits if they worked for DynCorp in Iraq or Afghanistan.  Plaintiffs plead all the

particulars required by Rule 9(b)—the date, place, and content (the disability coverage

provided in Attachment A) of the misrepresentation, as well as the identity of the person

making the misrepresentation, and what he obtained thereby (plaintiffs signing employment

contracts)—for all plaintiffs, except one. *See Benchmark Elecs.*, 343 F.3d at 724.  Plaintiffs fail to satisfy Rule 9(b) with respect to plaintiff Jaco Botes ("Botes"), because they do not plead the identity of the person making the misrepresentation to him.

Second, plaintiffs allege that DynCorp repeated this misrepresentation—that plaintiffs would be covered for disability benefits—during their employment.  Plaintiffs satisfy Rule 9(b) with respect to one plaintiff, G. Kieser.  Plaintiffs allege that, on July 25, 2008, when G. Kieser was working for DynCorp in Iraq, DynCorp offered him another job in Iraq; that to further induce him to take the job, DynCorp's Human Resources ("HR") department explained his disability benefits in Attachment A; and that, relying on that promise, he signed a contract confirming these benefits.  But plaintiffs do not satisfy Rule 9(b) as to the other plaintiffs.  Plaintiffs fail to allege the content of the misrepresentation made to Arnoldus Kieser ("A. Kieser"),[15] and, as to the other plaintiffs, they fail to allege what the person making the misrepresentation obtained thereby.

Third, plaintiffs allege that, after they suffered disabling injuries, DynCorp misrepresented that Lloyd's and CIGNA provided their insurance.  Plaintiffs do not satisfy Rule 9(b), however, as to any particular plaintiff.  They do not allege that anyone made this misrepresentation to plaintiffs Gerard Merrick ("Merrick"), Christiaan Oosthuizen

---

[15]Plaintiffs allege that when A. Kieser's contract ended in Iraq, he was recruited to work for DynCorp in Afghanistan; that to further induce him to take the job, he was sent a letter that "promised that he would be eligible for DynCorp's foreign hire package"; and that "*[A. Kieser] understood* this to include the Exhibit A personal accident insurance policy." 2d Am. Compl. ¶ 102 (emphasis added).  Plaintiffs do not specify, however, that the letter actually contained the alleged misrepresentation.

("Oosthuizen"), and Johann Steenberg ("Steenberg").  As for the remaining plaintiffs, plaintiffs do not allege the content of the misrepresentation.  Plaintiffs allege that, due to misrepresentations by DynCorp's representatives, plaintiffs Stefanus Du Preez ("Du Preez"), Danie Rademeyer ("Rademeyer"), and Gert Hitzeroth ("Hitzeroth") were required to fill out forms with Lloyd's rather than their proper insurer, DynCorp, and the remaining plaintiffs were led to believe that CIGNA was their disability insurer.[16]  Plaintiffs also fail to plead the time and place of the misrepresentations allegedly made to plaintiffs Leon Botha ("Botha"), Johanna Cronje ("J. Cronje"), Botes, Henry Bredenkamp ("Bredenkamp"), Dean Capazorio ("Capazorio"), Gideon Delport ("Delport"), Carel Fourie ("Fourie"), A. Kieser, G. Kieser, and Hady'n Potgieter ("Potgieter").

Fourth, plaintiffs allege that DynCorp misrepresented that they did not qualify for disability benefits.  Plaintiffs fail, however, to plead a plausible claim for any specific plaintiff because they do not allege that anyone working for DynCorp ever told them that they did not qualify for disability benefits or had a duty to disclose such information.  *See Twombly*, 550 U.S. at 570 (holding that to survive motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face").  They do not allege that DynCorp (or anyone else) denied Hitzeroth's claim.  They only allege that Du Preez's, Rademeyer's, and Steenberg's claims were denied by Lloyd's or Coleman.

---

[16]Plaintiffs allege that all the plaintiffs who were led to believe that CIGNA was their disability insurer, except for G. Kieser, previously forwarded disability claims to Mike Warren ("Warren") at DynCorp, but plaintiffs do not specify what (if any) misrepresentations Warren made to them.

But plaintiffs do not allege that Lloyd's was an agent of DynCorp.  And although they assert that Coleman "at various times acted as [an] agent[] for DynCorp," the second amended complaint lacks supporting facts and is therefore conclusory.  2d Am. Compl. ¶¶ 188-89; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).[17]  With respect to G. Kieser, plaintiffs allege that he filed a disability claim with Coleman, an agent of Lloyd's, and that Neil Goodley ("Goodley") denied the claim on behalf of DynCorp.  For support, they point to the denial letter from Goodley, which is attached as Exhibit 2 to the second amended complaint.  This denial letter, however, clearly states that Goodley is an employee of Coleman, and, as discussed above, plaintiffs do not sufficiently allege that Coleman or Lloyd's is an agent of DynCorp.[18]  *See Stockwell v. Kanan*, 442 Fed. Appx. 911, 913 (5th Cir. 2011) (per curiam) ("In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control.") (citations omitted). Additionally, plaintiffs allege that G. Kieser emailed an appeal request to an employee at DynCorp, who failed to explain to him that DynCorp was his proper insurer.  But plaintiffs do not allege that this employee had a duty to disclose this information to G. Kieser.  Plaintiffs also allege that DynCorp's representatives sent G. Kieser's claim to Midlands, and

---

[17]Plaintiffs also do not plead any of the Rule 9(b) particulars for Du Preez or Rademeyer.

[18]Plaintiffs also allege that G. Kieser forwarded a separate disability claim to DynCorp and that DynCorp denied his claim, but they do not plead any of the particulars required by Rule 9(b).

a Midlands adjuster denied his claim and failed to tell G. Kieser that the Lloyd's insurance policy, which Midlands used to analyze his claim, was actually between DynCorp and Lloyd's, not G. Kieser.  And although they assert that Midlands "at various times acted as [an] agent[] for DynCorp," the second amended complaint lacks supporting facts and is therefore conclusory.  2d Am. Compl. ¶ 189; *see also Iqbal*, 556 U.S. at 678.  And even if plaintiffs had sufficiently alleged an agency relationship or brought a fraud claim against Midlands, the court concludes *infra* at § XII(A) that plaintiffs have failed to plausibly plead that Midlands made the alleged misrepresentation.  Plaintiffs allege that Bredenkamp, Oosthuizen, and Merrick filed disability claims with DynCorp that were never answered and thus amounted to denials, but they do not allege that the DynCorp representative who received their claims had a duty to respond.[19]  Regarding the other plaintiffs, the second amended complaint alleges that the director of HR at DynCorp FZ sent letters to plaintiffs stating that their CIGNA benefits plans did not cover work-related injuries and did not mention that DynCorp maintained the Plan.  But they do not allege that this director made a misrepresentation in these letters or had a duty to disclose that DynCorp maintained the Plan.  Plaintiffs in fact agree that the director's statement—that CIGNA did not cover their work-related injuries—was true.  At most, these allegations support plaintiffs' claim that DynCorp misrepresented that they would be covered for disability benefits.

Accordingly, the court concludes that plaintiffs have satisfied the requirements of

---

[19]Plaintiffs also do not plead any of the Rule 9(b) particulars for Merrick.

Rules 8 and 9(b) for all plaintiffs, except Botes, with respect to the alleged misrepresentation that plaintiffs would be covered by disability insurance. They have also satisfied the requirements of Rules 8 and 9(b) for G. Kieser with respect to the alleged repeated misrepresentation that he would be covered for disability benefits during his employment. Plaintiffs have not satisfied Rules 8 or 9(b) in any other respect concerning the alleged misrepresentations on which they rely.

C

Plaintiffs assert that DynCorp made the material misrepresentations[20]—that plaintiffs would be eligible for disability benefits—"as inducement for, and with the intent that Plaintiffs would in fact rely on them, in accepting employment positions with DynCorp." 2d Am. Compl. ¶ 215.[21] Rule 9(b) allows plaintiffs to plead intent generally. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (citing Rule 9(b)) ("Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally."). "'Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess

_____

[20]The court will address together the two alleged misrepresentations that the court holds satisfy Rules 8 and 9(b)—that DynCorp misrepresented to all plaintiffs, except Botes, that they would be eligible for disability benefits if they worked for DynCorp in Iraq or Afghanistan, and that DynCorp repeated this misrepresentation to G. Kieser during his employment—because the same reasoning applies to both.

[21]The parties do not specifically address the intent requirement for a common law fraud claim. But because the parties address DynCorp's intent to defraud in their discussions of RICO, and because the court did not address intent under RICO, the court will address this issue.

fraudulent intent will not satisfy Rule 9(b).'" *Dorsey*, 540 F.3d at 339 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)).  "'The plaintiffs must set forth *specific* facts supporting an inference of fraud.'"  *Id.* (emphasis in original) (quoting *Melder*, 27 F.3d at 1102).  "'Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit . . . fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant.'"  *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002) (internal quotations omitted)).

Plaintiffs maintain that DynCorp had an economic motive to defraud because it owed them benefits from its own self-funded plan.  They also point to circumstances that allegedly indicate DynCorp's conscious behavior to defraud.  Plaintiffs contend that DynCorp insured itself through Lloyd's to protect itself, but, rather than insure plaintiffs through Lloyd's, DynCorp opted to self-fund plaintiffs' insurance, and then refused to cover plaintiffs for their injuries, shifting its lack of coverage and financial exposure to plaintiffs.  Plaintiffs cite to, and attach as Exhibit 3 to the second amended complaint, a 2006 summary of findings by the DynCorp Committee in another case that explains that an allegedly similar plan was self-funded, not insured, and was different from DynCorp's Lloyd's insurance policy.  Plaintiffs maintain that the 2006 summary "provide[s] plausible evidence that the Lloyd's policy does not cover Plaintiffs and was never intended to cover Plaintiffs."  Ps. Br. 4.  The court concludes that it can reasonably infer from the facts alleged that DynCorp intended for plaintiffs to act upon its allegedly false representations by accepting initial employment (all

plaintiffs except Botes) or accepting additional employment (G. Kieser).[22]

### D

Plaintiffs contend that they relied on DynCorp's misrepresentations by "accepting employment positions with DynCorp." 2d Am. Compl. ¶ 215. The court will first address DynCorp's alleged misrepresentation that all plaintiffs (except Botes) would be eligible for disability benefits if they worked for DynCorp in Iraq or Afghanistan. Plaintiffs allege that DynCorp misrepresented to Botha, Andre Cronje ("A. Cronje"), J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg that they would be eligible for disability insurance *before* they signed employment contracts or traveled to Iraq or Afghanistan to report to work.[23] These alleged pre-employment misrepresentations permit the court to reasonably infer that these plaintiffs undertook employment in reliance on DynCorp's alleged misrepresentation. But with respect to the other plaintiffs, plaintiffs allege that DynCorp misrepresented their insurance coverage only *after* they signed employment contracts and/or traveled from South

---

[22]DynCorp contends that the exhibits to the second amended complaint show that DynCorp did not deny plaintiffs' claims for coverage. Because the court concludes *supra* at § IX(B) that plaintiffs have not sufficiently alleged that DynCorp misrepresented that plaintiffs did not qualify for disability benefits, the court need not address this argument.

[23]Plaintiffs allege that before Badenhorst traveled to Iraq or signed his employment contract, he "received an offer letter from DynCorp" that "promised that he qualified for insurance benefits," and that, once he arrived in Iraq and signed his employment contract, "[DynCorp HR] explained to Badenhorst in more detail the benefits he was promised, including the attachment A." 2d Am. Compl. ¶¶ 166-67. Because plaintiffs do not allege that Badenhorst's offer letter contained any specific misrepresentation, the court concludes that plaintiffs have only sufficiently alleged that DynCorp misrepresented Badenhorst's insurance coverage after he traveled to Iraq and signed his employment contract.

Africa to Iraq or Afghanistan to report to work and/or began employment. The only reasonable inference that can be drawn from these allegations is that the remaining plaintiffs had already decided to accept employment positions with DynCorp *before* it misrepresented their disability insurance, and they did not rely on DynCorp's misrepresentations in undertaking employment.

Regarding the alleged repeated misrepresentation to G. Kieser during his employment, plaintiffs do not sufficiently plead reliance. Plaintiffs allege that DynCorp misrepresented his disability insurance before G. Kieser signed a second employment contract or began a second job in Iraq. But they do not assert that G. Kieser accepted the second job, and, even if he did accept the second job, plaintiffs do not allege when he was injured—during his first job or his second job. Instead, they allege only that "[r]elying on that promise, [G. Kieser] signed a contract confirming these benefits." 2d Am. Compl. ¶ 109.

Accordingly, the court holds that plaintiffs have sufficiently pleaded that Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg relied on DynCorp's alleged misrepresentation, but have not sufficiently pleaded reliance by the other plaintiffs. The plaintiffs also failed to sufficiently plead that G. Kieser relied on DynCorp's alleged repeated misrepresentation. The court therefore denies in part DynCorp's motion to dismiss plaintiffs' fraud claim as to Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg, and it grants DynCorp's motion to dismiss plaintiffs' fraud claim as to the remaining plaintiffs.

X

DynCorp moves to dismiss plaintiffs' claim for fraudulent inducement on the ground that plaintiffs' failure to establish a viable contract with DynCorp precludes this claim.

"'To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as 'an underlying contract which was induced.'" *DT Apartment Grp.*, 2012 WL 6693192, at *8 (quoting *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2011))). The court has already held that plaintiffs have sufficiently pleaded a valid underlying contract between plaintiffs and DynCorp, *see supra* at § VI, and that plaintiffs have sufficiently pleaded that DynCorp defrauded Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg. The court therefore denies DynCorp's motion to dismiss plaintiffs' fraudulent inducement claim as to Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg, and it grants the motion as to the remaining plaintiffs.

XI

DynCorp moves to dismiss plaintiffs' claim for promissory estoppel, contending that plaintiffs' employment contracts preclude this cause of action and that the alleged oral contracts between DynCorp and plaintiffs violate the statute of frauds.[24]

The court has already held that, because DynCorp was not a party to the employment

---

[24]Plaintiffs plead promissory estoppel as an alternative to their breach of contract claim.

- 41 -

contracts between plaintiffs and DynCorp FZ, plaintiffs' employment contracts do not

preclude the existence of implied contracts with DynCorp. *See supra* at § VI(C). The court

also has held that plaintiffs' breach of contract claim based on implied or oral contracts is not

precluded by the statute of frauds. *See supra* at § VI(E). Additionally, the court concluded

in *Stanissis I* that the amended complaint stated a claim for promissory estoppel, *see Stanissis

I*, 2015 WL 1931417, at *9, and the allegations of the second amended complaint regarding

promissory estoppel are essentially unchanged. Accordingly, DynCorp's motion to dismiss

plaintiffs' promissory estoppel claim is denied.

XII

Plaintiff G. Kieser asserts a claim for negligent misrepresentation against Midlands,

and plaintiffs allege a claim for negligent misrepresentation against DynCorp.

A

Midlands moves to dismiss G. Kieser's claim, contending that he has failed to state

a plausible claim for negligent misrepresentation because he does not allege any facts

supporting such a claim. Under Texas law, the elements of a claim for negligent

misrepresentation are:

> (1) the representation is made by a defendant in the course of his
> business, or in a transaction in which he has a pecuniary interest;
> (2) the defendant supplies "false information" for the guidance
> of others in their business; (3) the defendant did not exercise
> reasonable care or competence in obtaining or communicating
> the information; and (4) the plaintiff suffers pecuniary loss by
> justifiably relying on the representation.

*5636 Alpha Rd. Joint Venture v. NCNB Tex. Nat'l Bank*, 879 F. Supp. 655, 664 (N.D. Tex.

1995) (Fitzwater, J.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). G. Kieser alleges that

> Midlands misrepresented facts to [G. Kieser], namely that the
> Lloyd's policy covered [G. Kieser] and not DynCorp. Midlands
> negligently misrepresented to [G. Kieser] that they were
> handling his claim for his own insurance, even though they
> handled this claim under DynCorp's policy. [G. Kieser]
> justifiably relied on this representation, which proximately
> caused his damages.

2d Am. Compl. ¶ 218. G. Kieser alleges that Midlands made this representation in a letter denying his claim, which is attached as Exhibit 2 to the second amended complaint. But this denial letter does not state, or even suggest, that G. Kieser is directly insured through Lloyd's. Rather, it lists "DynCorp International, LLC" as the "Insured," states that it is written on behalf of "the Insurers of DynCorp," lists DynCorp's policy number, and repeatedly refers to "DynCorp's Insurers." 2d Am. Compl. Ex. 2; *see also Stockwell*, 442 Fed. Appx. at 913 ("In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control."). Additionally, G. Kieser does not allege any other facts that would permit the court to draw the reasonable inference that Midlands misrepresented facts to him on any other occasion. Because it cannot be reasonably inferred that Midlands in its denial letter supplied false information to G. Kieser that coverage existed for him through Lloyd's directly, the court concludes that G. Kieser's "allegations track the elements of a negligent misrepresentation cause of action but fail to plausibly allege any facts in support of such a claim." *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 2014 WL 145284, at *6 (N.D. Tex. Jan. 15, 2014) (Fitzwater, C.J.)

(citing *Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.") (citation omitted))).  G. Kieser's conclusory allegations are insufficient to state a plausible claim for relief.

Accordingly, the court grants Midlands' motion to dismiss.[25]

## B

DynCorp moves to dismiss plaintiffs' negligent misrepresentation claim on the ground that plaintiffs' alleged misrepresentations are based on promises of future action.  "[U]nder Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *Milton v. U.S. Bank Nat'l Ass'n*, 508 Fed. Appx. 326, 329 (5th Cir. 2013) (per curiam) (citing other sources); *Nunn, Yoest, Principals & Assocs., Inc. v. Union Pac. Corp.*, 69 Fed. Appx. 658, 2003 WL 21356004, at *2 n.4 (5th Cir. May 23, 2003) (per curiam) (unpublished opinion) (citing *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App. 1999, pet. denied) ("[T]he sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.")).

Plaintiffs allege that "DynCorp supplied false information for Plaintiffs to consider in accepting employment with DynCorp FZ."  2d Am. Compl. ¶ 217.[26]  In other words,

---

[25]Because the court is granting Midlands' motion to dismiss G. Kieser's negligent misrepresentation claim on the ground that he has failed to state a claim, it need not address Midlands' other arguments in support of dismissing this cause of action.

[26]As discussed in *supra* at § IX(D), plaintiffs only sufficiently allege justifiable reliance by the plaintiffs to whom DynCorp allegedly made misrepresentations about disability insurance coverage before the plaintiffs signed their employment contracts or traveled from South Africa to Afghanistan or Iraq to report for employment.  Because

DynCorp promised that, if plaintiffs later accepted employment with DynCorp FZ (and became injured on the job), it would provide them disability benefits. The court concludes that plaintiffs' negligent misrepresentation claim against DynCorp fails because it is based on misstatements of future conduct, not of existing fact. *See Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 374 (5th Cir. 2007) (per curiam) (affirming dismissal of negligent misrepresentation claim under Texas law, *inter alia*, because defendant's alleged promise—that if plaintiff refrained from disclosing that she had violated company policy, defendant would protect her job—was based on future events).

Accordingly, the court dismisses plaintiffs' negligent misrepresentation claim against DynCorp.[27]

## XIII

Finally, DynCorp moves to dismiss all of plaintiffs' claims on the ground that they are barred by limitations.[28]

---

reliance is also an element of negligent misrepresentation, *see DT Apartment Group*, 2012 WL 6693192, at *9, the court in its analysis in this section considers only the plaintiffs who allegedly relied on DynCorp's misrepresenation: Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg.

[27]Because the court concludes that plaintiffs' negligent misrepresentation claim against DynCorp must be dismissed on the basis that plaintiffs allege only misrepresentations based on promises of future events, the court need not consider DynCorp's remaining arguments for dismissal of this claim.

[28]Because the court has dismissed plaintiffs' civil RICO and DTPA claims, as well as their common law claims for punitive damages and negligent misrepresentation, the court need not consider whether these claims are barred by limitations.

A

"Limitations is an affirmative defense." *Barnett v. Colvin*, 2013 WL 1799929, at *1 (N.D. Tex. Apr. 29, 2013) (Fitzwater, C.J.) (citing Rule 8(c)(1)). "To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the 'successful affirmative defense [must] appear[] . . . clearly on the face of the pleadings.'" *Id.* (alterations in original) (quoting *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986))); *see also supra* at § VI(E). Under Texas law, a four-year statute of limitations governs claims for fraud, fraudulent inducement, breach of contract, and promissory estoppel. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004 (fraud and breach of contract) & 16.051 (promissory estoppel); *see also A.I. Credit Corp. v. Thomas*, 201 Fed. Appx. 232, 235 n.3 (5th Cir. 2006) (per curiam) (fraud and promissory estoppel); *TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F.Supp.3d 661, 668 (N.D. Tex. 2014) (Fitzwater, C.J.) ("*TIB II*") (breach of contract). There is a two-year statute of limitations governing claims for the breach of the duty of good faith and fair dealing. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003; *see also Wetsel v. State Farm Lloyds Ins. Co.*, 2002 WL 1592665, at *2 (N.D. Tex. July 18, 2002) (Fitzwater, J.).

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). "In most cases, a cause of action accrues when a wrongful act causes a legal injury,

regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

DynCorp contends that plaintiffs' claims are based on allegations concerning a 2003 benefits summary, and that they did not file suit until July 2014.  DynCorp also maintains that plaintiffs' claims arose before they were employed by DynCorp FZ, and that plaintiffs allege that they worked for DynCorp FZ for many years before filing suit.  DynCorp does not specify when it contends the statute of limitations began running for plaintiffs' claims.

Plaintiffs allege that they first suffered a legal wrong when their claims for benefits were denied, but they do not cite any cases or explain their reasoning.  Alternatively, plaintiffs rely on two grounds to toll the running of the statute of limitations: the discovery rule and the doctrine of fraudulent concealment.

## B

The court turns first to plaintiffs' breach of contract and promissory estoppel claims.  "A cause of action for breach of contract generally accrues when the contract is breached." *TIB II*, 13 F.Supp.3d at 668 (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)).  A cause of action for promissory estoppel "accrues at the time the promisor breaches its promise to the promisee." *Bloom v. Burkholder Corp.*, 1995 WL 379272, *3 (Tex. App. May 30, 1995, no pet.) (citing *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)).  The court concludes that plaintiffs have plausibly pleaded that DynCorp breached its contract or promise to plaintiffs when their disability claims were denied.  Accordingly, the statute of limitations for each plaintiff's breach of contract claim, and, alternatively, each plaintiff's

promissory estoppel claim, began to run on the date of claim denial. Because it does not appear from the face of plaintiffs' second amended complaint that plaintiffs' claims were denied more than four years before they filed suit, the court denies DynCorp's motion to dismiss plaintiffs' claim for breach of contract, or, alternatively, for promissory estoppel, based on limitations.

## C

The court turns next to plaintiffs' claims for fraud and fraudulent inducement. "An action for fraud typically accrues when the fraud is perpetuated." *Travelhost, Inc. v. Brady*, 2012 WL 6971164, at \*2 (N.D. Tex. Dec. 21, 2012) (Toliver, J.) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Jackson v. Speer*, 974 F.2d 676, 679-80 (5th Cir. 1992)). But "[w]hen a defendant fraudulently conceals the existence of a cause of action, the cause of action does not accrue and the statute of limitations is tolled until the claimant discovers or should have discovered the fraud." *Glover v. Raytheon Co.*, 2013 WL 5744361, at \*4 (N.D. Tex. Oct. 23, 2013) (Lindsay, J.) (citing *Computer Assocs. Int'l Inc. v. Altar, Inc.*, 918 S.W.2d 453, 455 (Tex. 1994)). Under the doctrine of fraudulent concealment, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. "'The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances [that] would cause a reasonably prudent person to make inquiry, which if pursued, would lead to the discovery of the concealed cause of action.'" *Glover*, 2013 WL 5744361, at \*4 (alteration in original) (quoting *Etan Indus., Inc. v. Lehmann*, 359

- 48 -

S.W.3d 620, 623 (Tex. 2011)).

"[F]raudulent concealment must be established by the party who seeks to avoid limitations." *Brupbacher v. Raneri*, 2000 WL 665560, at *4 (N.D. Tex. Mar. 17, 2000) (Fitzwater, J.) (citing *S & M Representatives, Inc. v. Hrga*, 1998 WL 267945, at *3 n.4 (N.D. Tex. May 15, 1998) (Fish, J.) (citing *Computer Assocs. Int'l Inc.*, 918 S.W.2d at 455-56)). Accordingly, plaintiffs must sufficiently plead that "(1) [DynCorp] had actual knowledge of the facts giving rise to plaintiffs['] cause of action, (2) [DynCorp] concealed [its] unlawful conduct, and (3) plaintiff[s] failed, despite due diligence on [their] part, to discover the facts giving rise to [their] cause of action." *Vernon v. City of Dallas*, 2009 WL 2486033, at *5 (N.D. Tex. Aug. 13, 2009) (Boyle, J.) (citing *Texas v. Allen Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988); *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984)).

The court holds that plaintiffs have adequately pleaded that the doctrine of fraudulent concealment applies. First, they have sufficiently alleged that DynCorp had actual knowledge of the facts giving rise to plaintiffs' fraud-based claims. The court has held above that plaintiffs have adequately pleaded that DynCorp made misrepresentations—that plaintiffs would be eligible for disability insurance—with the intent that plaintiffs would act on the misrepresentations by accepting employment positions on DynCorp's projects in Iraq and Afghanistan. *See supra* at § IX. Plaintiffs have also sufficiently alleged that, after sustaining serious injuries that met the requirements of a disability under the promised benefits, each plaintiff sent a disability claim to DynCorp in Texas.

Second, plaintiffs have sufficiently pleaded that DynCorp concealed its allegedly

unlawful conduct.  Plaintiffs assert that, when they submitted disability claims to DynCorp, DynCorp hid either its status as a self-insurer or the fact that it had not purchased the promised disability benefits, and instead attempted to steer plaintiffs to others who were not their insurers.  Plaintiffs allege that they sent disability claims to DynCorp, that DynCorp misrepresented that plaintiffs' disabilities were insured by CIGNA (even though CIGNA only provided their health and medical insurance), and that DynCorp directed plaintiffs' claims to Lloyd's, Lloyd's underwriter, DynCorp's broker, and Midlands, even though DynCorp knew that Lloyd's was DynCorp's insurer, not plaintiffs' insurer.

Third, plaintiffs have sufficiently pleaded that no diligence on their part would have led to discovery of the facts giving rise to their claims.  *See Vernon*, 2009 WL 2486033, at *5 (quoting *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995)) (explaining that "when a defendant controls the facts giving rise to a plaintiff's cause of action 'such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled'").

Plaintiffs should have discovered the alleged fraud when their disability claims were denied.  *See DeShazo v. Nations Energy Co.*, 286 Fed. Appx. 110, 114 (5th Cir. 2008) (per curiam) (quoting *Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir. 1992)) ("'Knowledge of facts that would lead a reasonably prudent person to make inquiry which would lead to a discovery of the fraud is knowledge of the fraud itself.'").  Accordingly, the limitations period for each plaintiff's fraud or fraudulent inducement claim was tolled until the disability claim on which the claim was based was denied.  Because DynCorp does not aver that any plaintiff's fraud

or fraudulent inducement claim was filed more than four years after the denial of the disability claim on which the claim was based, DynCorp is not entitled to dismissal of plaintiffs' fraud and fraudulent inducement claims based on limitations.[29]

D

Finally, the court considers plaintiffs' claim for breach of the duty of good faith and fair dealing. "The Texas Supreme Court has held that a plaintiff's cause of action alleging breach of the duty of good faith and fair dealing for denial of coverage under a first-party insurance contract accrues on the date the plaintiff's claim is denied." *Wetsel*, 2002 WL 1592665, at *2 (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990)). The parties agree that G. Kieser and Steenberg received claim denial letters dated October 2010 and March 2012, which are attached as Exhibit 2 to the second amended complaint, and that more than two years elapsed between when G. Kieser's and Steenberg's claims were denied and when plaintiffs filed this lawsuit. Because G. Kieser and Steenberg did not file suit within two years of the denials, their breach of the duty of good faith and fair dealing claims are time-barred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003.[30] DynCorp does not aver that any other plaintiff's breach of the duty of good faith and fair dealing claim was filed more than two years after the disability claim was denied. Accordingly, the court

---

[29]Because the court concludes that the doctrine of fraudulent concealment applies, it need not also determine whether the discovery rule applies.

[30]Neither the doctrine of fraudulent concealment nor the discovery rule would assist G. Kieser and Steenberg in avoiding the limitations bar because each should have discovered the alleged fraud when his claim was denied.

grants in part DynCorp's motion to dismiss G. Kieser's and Steenberg's breach of the duty of good faith and fair dealing claims based on limitations, and it denies in part DynCorp's motion as to the remaining plaintiffs' claims.

XIV

To summarize, plaintiffs' civil RICO claims are dismissed; plaintiffs' DTPA claim is dismissed; plaintiffs' claim for punitive damages (but not its requested remedy of punitive damages) is dismissed; the fraud claims of all plaintiffs are dismissed except for the fraud claims of Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg based on DynCorp's alleged misrepresentation that plaintiffs would be covered for disability benefits if they worked for DynCorp in Iraq or Afghanistan; the fraudulent inducement claims of all plaintiffs are dismissed except for the claims of Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg; plaintiffs' negligent misrepresentation claim against DynCorp, and G. Kieser's negligent misrepresentation claim against Midlands, are dismissed; and the claims of G. Kieser and Steenberg for breach of the duty of good faith and fair dealing are dismissed.

The claims that remain are plaintiffs' claims for breach of contract and promissory estoppel; the claims for fraud and fraudulent inducement of plaintiffs Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Oosthuizen, and Steenberg; and the claims of all plaintiffs except G. Kieser and Steenberg for breach of the duty of good faith and fair dealing.

*     *     *

For the reasons explained, DynCorp's motion to dismiss under Rules 9(b) and 12(b)(6) is granted in part and denied in part.  Midlands' motion to dismiss under Rules 9(b) and 12(b)(6) is granted, and the action against it is dismissed with prejudice by Rule 54(b) final judgment filed today.

**SO ORDERED**.

December 29, 2015.

_____

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 53 -