IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZANI STANISSIS, INDIVIDUALLY and AS REPRESENTATIVE OF THE ESTATE OF HER HUSBAND, CAVIN STANISSIS, et al., | § § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:14-CV-2736-D |
| VS. | § § | (Consolidated with Civil Action No. 3:15-CV-2026-D) |
| | § | |
| DYNCORP INTERNATIONAL LLC, et al., | § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

        In this action by, or on behalf of, several South African security workers seeking to recover on contract, fraud, and related theories for the denial disability benefits for employment performed in Iraq and Afghanistan, defendant DynCorp International LLC ("DynCorp") moves to dismiss for failure to state a claim, for summary judgment, and to strike plaintiffs' summary judgment evidence or for related relief.  For the reasons that follow, the court grants in part and denies in part the motions for summary judgment, denies the motion to strike, and denies the motion to dismiss as moot.  Plaintiffs' breach of contract claims and the promissory estoppel claims of all but two plaintiffs remain for trial; the other claims are dismissed.

The court has issued several memorandum opinions and orders in this case, and the relevant background facts are set out in *Stanissis v. DynCorp International LLC*, 2015 WL 1931417, at *1-2 (N.D. Tex. Apr. 29, 2015) (Fitzwater, J.), *Stanissis v. DynCorp International LLC*, 2015 WL 9478184, at *1-2 (N.D. Tex. Dec. 29, 2015) (Fitzwater, J.) ("*Stanissis II*"), and *Stanissis v. DynCorp International LLC*, 2016 WL 4159397, at *1-2 (N.D. Tex. Aug 5, 2016) (Fitzwater, J.). The court will therefore limit its discussion of the facts to those that are relevant to this memorandum opinion and order.

These are consolidated actions brought by plaintiffs Zani Stanissis ("Stanissis"), individually and as representative of the estate of her husband, Cavin Stanissis ("Cavin"), Leon Botha ("Botha"), Andre Cronje ("A. Cronje"), Johanna M. Cronje ("J. Cronje"), Jaco Botes ("Botes"), Henry Bredenkamp, Dean Capazorio, Gideon Delport ("Delport"), Stefanus Du Preez, Carel Fourie ("Fourie"), Gert Hitzeroth ("Hitzeroth"), Arnoldus Kieser ("A. Kieser"), George Kieser ("G. Kieser"), Catharina Louw ("Louw"), Gerard Merrick, Christiaan Oosthuizen ("Oosthuizen"), Hady'n Potgieter ("Potgieter"), Danie Rademeyer ("Rademeyer"), Chris Badenhorst ("Badenhorst"), Johann Steenberg ("Steenberg"), and Adriano Manuel ("Manuel"). Plaintiffs seek disability benefits that they maintain DynCorp promised them in exchange for undertaking employment as security workers in Iraq and Afghanistan.[1] Plaintiffs all signed employment contracts with DynCorp FZ International

_____

[1]In deciding Dyncorp's summary judgment motions, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all

("DynCorp FZ"), a separate company based in Dubai, which then leased the employees back to DynCorp.[2] They allege that DynCorp's promise was separate from any employment contract with DynCorp FZ, but the details of the promise were included in a document attached to their employment contracts with DynCorp FZ, entitled "Attachment A." Plaintiffs contend that DynCorp never provided the benefits it promised, including disability benefits for mental illnesses such as post-traumatic stress disorder ("PTSD").

In the court's prior opinions, it considered DynCorp's and then-codefendant Midlands Claim Administrators, Inc.'s ("Midlands'") motions to dismiss. The court dismissed all claims against Midland, and it dismissed all claims against DynCorp except for some plaintiffs' claims for fraud and fraudulent inducement,[3] breach of oral or implied contract, promissory estoppel, and breach of the duty of good faith and fair dealing. Plaintiffs' operative pleadings are their second amended complaint ("amended complaint") and Manuel's first amended complaint ("amended complaint").[4]

_____

reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]For ease of reference, the court includes Stanissis in the term "plaintiffs" even though she is suing both individually and as representative of the estate of her husband Cavin.

[3]Only eight plaintiffs' fraud and fraudulent inducement claims remain: the claims of Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Manuel, Oosthuizen, and Steenberg.

[4]Although Manuel has filed separate pleadings in this case, he joins plaintiffs' responses to DynCorp's motions. Accordingly, the court will consider their claims together. Where Manuel's amended complaint is duplicative of plaintiffs' amended complaint, the court will only cite and discuss plaintiffs' pleadings.

Six motions are pending for decision: (1) DynCorp's motion to dismiss the fraud count of Manuel's amended complaint; (2) DynCorp's motion for summary judgment on the entire case; (3) DynCorp's motion for summary judgment on each cause of action; (4) DynCorp's motion for summary judgment on all claims of certain individual plaintiffs; (5) DynCorp's motion for partial summary judgment on damages as to the maximum amount of any potential disability benefits recovery, and plaintiffs' attorney's fees, extra-contractual damages, and punitive damages remedies; and (6) DynCorp's motion to strike plaintiffs' December 2016 declarations, or alternative reopening of discovery and requiring plaintiffs to file third amended complaint.[5]  Plaintiffs oppose the motions.

II

DynCorp's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial.  To be entitled to summary judgment on a defense for which it will have the burden of proof, DynCorp "must establish 'beyond peradventure all of the essential elements of the . . . defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that DynCorp

---

[5]Although it may appear from this description that DynCorp has violated the court's limit on the number of summary judgment motions that may be filed, *see* N.D. Tex. Civ. R. 56.2(b), DynCorp obtained leave to file up to four summary judgment motions based on a motion that plaintiffs did not oppose.  Considering the number of plaintiffs and claims, and the limits that DynCorp accepted on the length of its summary judgment briefing (and the use of a common appendix), the court granted permission for DynCorp to file four summary judgment motions.

must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When Dyncorp will not have the burden of proof at trial as to a claim, it need only point the court to the absence of evidence of any essential element of plaintiffs' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, plaintiffs must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where plaintiffs fail to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns initially to DynCorp's motion to strike plaintiffs' December 2016 declarations, or alternative reopening of discovery and requiring plaintiffs to file third amended complaint. DynCorp contends that plaintiffs' declarations are improper for two

reasons: (1) they raise new legal claims and factual bases for legal theories, and (2) they are inconsistent with, and contradict, plaintiffs' deposition testimony and undisputed facts in the case, and are invented to create factual disputes to defeat summary judgment.

The court can "disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012). And the court in its discretion can disregard declarations submitted in response to a summary judgment motion that, without explanation, contradict prior testimony. *Keller v. Coastal Bend Coll.*, 629 Fed. Appx. 596, 601 n.4 (5th Cir. 2015) (reviewing district court's exclusion of contradictory later statement for abuse of discretion). It is therefore unnecessary in the context of this lawsuit for the court to strike plaintiffs' declarations *in toto*; instead, if material to the court's decision on one of DynCorp's motions, the court will individually analyze whether plaintiffs are raising a new legal claim or factual basis for a legal theory, or are relying on declarations that are inconsistent with, and contradict, their deposition testimony and undisputed facts in the case. Nor is it necessary, given this approach, to reopen discovery or to require that plaintiffs file a third amended complaint.

The court therefore denies DynCorp's motion to strike or reopen discovery and require plaintiffs to file a third amended complaint.

IV

The court next considers DynCorp's motion for summary judgment on the entire case.

A

DynCorp contends on three grounds that it is entitled to summary judgment as a matter of law on all of plaintiffs' claims: (1) DynCorp is not a party to the employment contracts and therefore is not liable for DynCorp FZ's promises; (2) the employment contracts contained integration clauses that disclaimed any other representations made about benefits outside of Attachment A, and DynCorp can enforce those terms as a third-party beneficiary; and (3) the offer letters contain similar integration clauses stating that each plaintiff did not rely on benefits descriptions in Attachment A in accepting employment. DynCorp's arguments rely on the assumption that "Plaintiffs' entire case is that [DynCorp] promised and did not later provide them the disability benefits described in . . . Attachment A[.]" D. 10/28/16 Br. 3 (ECF 147).[6]

Plaintiffs maintain that any promise DynCorp made, although referenced in Attachment A, was completely separate from their employment contracts with DynCorp FZ. Plaintiffs posit that DynCorp "promised the $250,000.00 in insurance benefits. This contract was separate and distinct from DynCorp FZ's conduct, which referenced $85,000.00 in insurance benefits in its contract." Ps. 12/9/16 Br. 3 (ECF 167). Plaintiffs counter that nothing in the employment contracts they executed with DynCorp FZ foreclosed any separate

---

[6]For clarity, the court will cite the parties' briefs by the date filed, and, in parentheses, by the ECF docket number.

promise by DynCorp for benefits.

The court agrees with plaintiffs. DynCorp cites no case law supporting the theory that plaintiffs cannot have entered into contracts for benefits with DynCorp that were separate from their employment agreements with DynCorp FZ. Therefore, it is not dispositive under plaintiffs' theory of the case that DynCorp is not a party to plaintiffs' employment contracts with DynCorp FZ.

Nor is DynCorp entitled to summary judgment based on the integration clauses in the employment contracts and offer letters with DynCorp FZ.[7] Even assuming that such integration clauses could effectively bar plaintiffs' claims, DynCorp has not established that it is a third-party beneficiary of the contracts or letters.

> Courts should presume that an agreement confers no third-party enforcement rights unless it clearly appears that the contract intends that the third party benefit, to the point of suing upon the contract. A contract does not confer third-party beneficiary rights unless (1) the contract plainly expresses the third-party obligation of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within the contemplation of the primary contracting parties, and (3) the primary parties contemplate that the third party would be vested with the right to sue for enforcement of the contract.

*Hudson v. Chartoni Inc.*, 2016 WL 828053, at *3 (Tex. App. Mar. 3, 2016, no pet.) (mem. op.) (citation omitted). DynCorp has not demonstrated that it can enforce the integration clauses in plaintiffs' employment contracts and offer letters with DynCorp FZ as a third-party

---

[7]DynCorp does not argue that any alleged promise was ambiguous so as to allow consideration of extrinsic evidence; rather, the focus of DynCorp's motion is on the existence of a contract. The court thus assumes that the contracts were unambiguous.

beneficiary.

Accordingly, the court denies summary judgment on the entire case on these three grounds.

B

DynCorp also maintains that plaintiffs have no evidence that any recruiter made promises of benefits before employment began, or that the recruiter was a DynCorp employee or agent.[8] DynCorp contends that this precludes recovery on all of plaintiffs' claims because each claim requires that plaintiffs establish that they relied on Attachment A in accepting employment.

The court concludes that DynCorp has failed to shift the summary judgment burden on this issue because it does not point to a lack of evidence of an essential element of plaintiffs' claims. *See Saunders Family Ventures, LLC v. Domestic Natural Res., LLC*, 2017 WL 106794, at *8 (N.D. Tex. Jan. 11, 2017) (Fitzwater, J.) (holding that, where defendants failed to point to absence of evidence of any essential element of plaintiffs' breach of fiduciary duty claim, they failed to shift the burden to plaintiffs and were not entitled to summary judgment). Plaintiffs' claims rest on allegations that "[DynCorp] (specifically

---

[8]In a reply brief, DynCorp also asserts that plaintiffs have no evidence that any DynCorp employee made a pre-employment representation. Because DynCorp raises this argument for the first time in reply, the court will not consider it. *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

employee Jas Gil) promised [pre-2006 plaintiffs] that they would [be] covered for $125,000.00 in disability benefits[,]" Ps. 12/9/16 Br. 6 (ECF 167), and DynCorp "promised [post-2006 plaintiffs] $250,000.00 in disability benefits[,]" *id.* at 9. Plaintiffs do not allege that *only* recruiters promised benefits. It is thus entirely possible and consistent with the allegations of plaintiffs' amended complaint that, in addition to recruiters, someone else acting on DynCorp's behalf represented that employees would receive disability benefits. *See, e.g.*, Am. Compl. ¶¶ 28 & 29 (ECF 52) (alleging that when plaintiff Botha arrived in Baghdad in October 2004 and signed documents, including employment agreement, his benefits were explained to him by Human Resources Manager Sonja Edwards; that in 2005 DynCorp Director Jas Gill ("Gill") also explained the benefits to Botha at a meeting in Baghdad; that Botha's benefits were explained to him by his team leader Rick Bonus and PSD Commander Garry Lawrence; and that in December 2006 DynCorp again represented to Botha that he would receive personal accident benefits under Attachment A if he suffered an on-the-job injury; and alleging that "before accepting his employment offer, [Botha] was promised personal accident benefits by [DynCorp], described in attachment 'A.' [DynCorp's] representatives told Botha that he was covered for disability claims for personal injury accidents, and that he would receive both workers' compensation and personal accident insurance if he was injured on-the-job," *id.* at ¶ 29.).

Because DynCorp has not established that it is entitled to summary judgment on plaintiffs' entire case, the court denies the motion and proceeds to consider DynCorp's remaining motions.

V

The court next considers DynCorp's motion for summary judgment on all claims of certain individual plaintiffs.

A

DynCorp first contends that nine plaintiffs' claims fail because they testified in their depositions that they had not seen or did not recall seeing Attachment A.[9]  At least as to the two claims that remain following today's decision—breach of contract and promissory estoppel—the court disagrees.

Plaintiffs' breach of contract claim rests on the premise that plaintiffs and DynCorp entered into implied or oral contracts.  *See* Am. Compl. ¶ 209 (ECF 52) ("While this contract was not a written agreement, an implied or verbal contract existed between the Plaintiffs and DynCorp[.]").  Attachment A is alleged to set out the benefits to which plaintiffs are entitled.  *See, e.g., id.* at ¶ 8.  But plaintiffs need not have actually seen Attachment A to prevail on their contract claims because they are not relying on it as the contract with DynCorp but instead to prove that they entered into implied or oral contracts with DynCorp.  *See* Ps. 12/9/16 Br. 15 (ECF 167) ("But importantly, Attachment A only provides evidence of the implied contract with DynCorp International.  Attachment A is not the actual agreement between Plaintiff[s] and DynCorp International." (bold font omitted)).

Nor do plaintiffs' promissory estoppel claims fail on this basis.  Plaintiffs rely for

---

[9]The nine plaintiffs are A. Cronje, J. Cronje, Fourie, Hitzeroth, Louw, Manuel, Potgieter, Rademeyer, and Steenberg.

these claims on the premise that "Defendant [DynCorp] (and its agents) promised benefits to Plaintiffs in exchange for their work overseas." Am. Compl. ¶ 216 (ECF 52). A plaintiff need not have actually seen Attachment A if DynCorp represented orally the benefits that Attachment A conferred. And plaintiffs have introduced evidence that it did. *See, e.g.*, Ps. 12/9/16 App. 5 (ECF 167) (Badenhorst declaration) (averring that it was his "understanding from the verbal statements and conduct of [DynCorp] that the terms of the insurance that was allegedly secured by [DynCorp] mirrored those outlined in the May 12, 2003 Attachment A benefits summary.").

DynCorp's motion is therefore denied on this ground.

B

DynCorp next contends that Stanissis' claims on behalf of her husband Cavin for breach of contract, promissory estoppel, and breach of the duty of good faith and fair dealing fail because (1) she has insufficient evidence to support her claims, and (2) she does not have standing on his behalf. The court will consider the standing argument here; it will defer consideration of DynCorp's argument regarding the sufficiency of Stanissis' evidence for each of her three claims when it discusses the claims below.

Although DynCorp and Stanissis both discuss whether Stanissis has standing to bring her suit, the question is one of capacity to sue rather than standing. "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.'" *Austin*

*Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (citing Charles Alan Wright, et al., *Federal Practice and Procedure* § 1559, at 441 (2d ed. 1990)). Whether someone may bring suit on an estate's behalf is a question of the individual's "capacity to bring a survival claim." *Id.* at 850. The court will therefore construe the parties' arguments as relating to whether Stanissis has the capacity to sue.

In the amended complaint, plaintiffs allege that Stanissis has capacity to sue under Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004 and 71.021 (West 2017), and Texas common law. But § 71.004 addresses wrongful death actions, and § 71.021 pertains to personal injury claims, neither of which is relevant to plaintiffs' claims. Stanissis must therefore rely on Texas common law to establish her capacity to sue.

"[U]nder the common law, actions for breach of contract . . . survive[] the death of either party." *Launius v. Allstate Ins. Co.*, 2007 WL 1135347, at *4 (N.D. Tex. Apr. 17, 2007) (Boyle, J.) (citing *Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex. App. 1988, no writ)). This is because "the basic rule under the common law [was] that actions primarily affecting property and property rights survived the death of the aggrieved party whereas actions asserting purely personal rights did not." *Id.* It follows that other actions sounding in contract, such as promissory estoppel, survive the death of either party. *See id.*

The general rule under Texas law is that an estate administrator has the exclusive capacity to sue for recovery of estate property. *Kenseth v. Dall. Cnty.*, 126 S.W.3d 584, 595 (Tex. App. 2004, pet. denied) (citing *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971)). When no administration is pending or necessary, an heir may sue on the decedent's behalf.

- 13 -

*Frazier*, 472 S.W.2d at 752. Heirs have capacity to sue "if they allege and prove that there is no administration pending and that none is necessary." *McPeak-Torres v. Brazoria Cnty.*, 2014 WL 12591850, at *4 (S.D. Tex. Nov. 5, 2014) (emphasis omitted), *rec. adopted*, 2015 WL 12748276, at *3 (S.D. Tex. Jan. 22, 2015).

DynCorp contends that Stanissis cannot establish standing to sue because she concedes in response that she did not have standing when the lawsuit was filed. As DynCorp correctly notes, standing must be established at the time suit is filed and cannot be cured. *See, e.g.*, *Lewis v. Ascension Parish Sch. Bd*, 662 F.3d 343, 347 (5th Cir. 2011) (per curiam). But as the court explains above, the issue here is capacity, not standing, to sue. And "[u]nlike standing . . . capacity to sue can be cured." *Id.* (quoting Fed. R. Civ. P. 17(c)). In *Lovato*, for example, the plaintiff lacked capacity to sue when she initially filed suit because the limitations period for the estate to sue had not expired. *Lovato*, 171 S.W.3d at 852. But the limitations period elapsed while the suit was pending, and the plaintiff gained capacity to sue. *Id.* The Supreme Court of Texas held that the plaintiff's newfound capacity after filing suit cured the defect in capacity. *Id.*

Here, Stanissis declared that Cavin's estate closed in 2014, and all of the estate's debts were resolved. Whether the estate was closed when she filed the suit is immaterial. *See id.* Stanissis has proved that there is no administration pending and no need for future administration. *See, e.g.*, *McPeak-Torres*, 2014 WL 12591850, at *3 . The court therefore concludes that she has established her capacity to sue.

C

DynCorp next challenges all of Badenhorst's claims as time-barred based on deposition testimony that DynCorp alleges shows his claims accrued in 2009.[10]

1

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

"A cause of action for breach of contract generally accrues when the contract is breached." *TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F.Supp.3d 661, 668 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). A cause of action for promissory estoppel "accrues at the time the promisor breaches its promise to the promisee." *Bloom v. Burkholder Corp.*, 1995 WL 379272, at *3 (Tex. App. May 30, 1995, no pet.) (not designated for publication) (citing *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)). The statute of limitations for both claims is four years. *Stanissis II*,

---

[10]DynCorp also challenges Badenhorst's claim for breach of the duty of good faith and fair dealing based on his deposition testimony. Because the court grants DynCorp's motion for summary judgment on this claim against all plaintiffs, *see infra* § IX, the court denies this portion of the motion as moot.

2015 WL 9478184, at *19.

2

DynCorp points to Badenhorst's deposition testimony, contending that it establishes that DynCorp's alleged breach of its promise of benefits to Badenhorst occurred, if at all, in 2009. Badenhorst injured himself when he fell down steps in Iraq, and he contacted DynCorp's Michael Warren in 2009 seeking disability benefits. When asked during his deposition why he did not submit an official personal accident claim for benefits, Badenhorst responded that "[he] contacted Michael Warren in Dubai, telephonically, and [Warren] told me to direct it to CIGNA as DynCorp wasn't responsible for that and, being third country nationals, we weren't covered anyway." D. 10/28/16 App. 139 (ECF 155).

Plaintiffs respond that this conversation is irrelevant because Badenhorst's claims "involved coverage from a different insurer, CIGNA, not the coverage promised by DynCorp itself." Ps. 12/9/16 Br. 17 (ECF 163). Plaintiffs maintain that CIGNA did not insure Badenhorst for disability. And they posit that "[b]ecause the [DynCorp] employee specifically steered Mr. Badenhorst to file a claim with CIGNA for disability insurance . . . Mr. Badenhorst he had no knowledge that [DynCorp] had breached its contract . . . because his claim had not been denied." *Id.* at 18 (internal citations omitted). Instead, plaintiffs maintain that Badenhorst's claims accrued in 2013, when DynCorp denied his claims for disability benefits for PTSD.

The court concludes that DynCorp has failed to establish that Badenhorst's claims are time-barred based on the 2009 telephone call, but it does so for a different reason than plaintiffs advance. Badenhorst's 2013 disability claim for PTSD is unrelated to his 2009 personal accident benefits claim for physical injuries—they are two separate claims for two separate injuries. Even if the court assumes *arguendo* that a claim accrued against DynCorp when Badenhorst made the 2009 telephone call, a reasonable jury could find that a separate claim accrued in 2013 when Badenhorst attempted to make a claim for disability benefits for PTSD. Because Badenhorst only seeks to recover on his 2013 claim, DynCorp has failed to demonstrate that the claim is time-barred.

## VI

The court now considers DynCorp's motion for summary judgment on each cause of action. The court begins with the claims for fraud and fraudulent inducement asserted by Botha, A. Cronje, J. Cronje, Delport, G. Kieser, Manuel, Oosthuizen, and Steenberg (collectively, the "Fraud Plaintiffs"). DynCorp contends that the Fraud Plaintiffs cannot adduce evidence to satisfy any element of their claims for fraud and fraudulent inducement. *See, e.g.,* D. 10/28/16 Br. 1-2 (ECF 149).

A

In Texas, the elements of common law fraud are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C. J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law) (citations omitted)), *aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015). "To prove fraud based on a promise of future performance, a plaintiff must show that the person making the promise had no intention of performing at the time he made the promise." *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 6693192, at *6 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (citing *Fluorine On Call, Ltd.*, 380 F.3d at 858).

"'To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud as well as 'an underlying contract which was induced.'" *Id.* at *8 (quoting *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2011))).

B

Plaintiffs contend that DynCorp fraudulently represented that plaintiffs would be covered for disability benefits if they suffered an injury. Although DynCorp challenges all elements of plaintiffs' claims for fraud and fraudulent inducement, the court first considers whether there is an absence of evidence that DynCorp made this representation knowing it

was false or without knowledge of the truth. *See, e.g.,* D. 10/28/16 Br. 3, 17 (ECF 149). The burden has therefore shifted to plaintiffs to introduce evidence that would enable a reasonable jury to find in their favor on this essential element. Plaintiffs have not met this burden.

Plaintiffs have not pointed to evidence that would enable a reasonable jury to find that DynCorp made this representation knowing that it was false or without knowledge of the truth. Plaintiffs' brief dedicates a single paragraph to this element. *See* Ps. 12/9/16 Br. 28-29 (ECF 169). Their only citation to the record is to testimony of Dyncorp Director of Risk Management Richard Burggraf ("Burggraf"), who testified that the Risk Management Department provided benefits information to HR, who then provided it to plaintiffs. Burggraf also testified that some of the representations, *if* made to plaintiffs, would have been "misleading" or "completely inaccurate." Ps. 12/9/16 App. 452 (ECF 167). Plaintiffs also note that "Risk[] Management was in charge of procuring insurance, and therefore Risk Management knew that (1) [DynCorp] had completely unfunded disability from 2005 to 2008, and (2) [DynCorp] obtained a materially different policy after 2008." Ps. 12/9/16 Br. 29 (ECF 169).

The evidence on which the Fraud Plaintiffs rely is conclusory and speculative and therefore insufficient to meet their summary judgment burden. *See, e.g., Choe v. Bank of Am., N.A.*, 2014 WL 2438378, at *3 (N.D. Tex. May 30, 2014) (Fitzwater, C.J.) (holding that summary judgment nonmovants' "conclusory assertion—unsupported by a proper citation to the summary judgment record—[was] insufficient to withstand summary judgment[.]"),

*aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015); *see also Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*)). Accordingly, the court concludes that a reasonable jury could not find in plaintiffs' favor on their fraud and fraudulent inducement claims, and it grants summary judgment dismissing these claims.[11]

VII

The court now turns to plaintiffs' claims for breach of contract. Plaintiffs allege that DynCorp breached two separate contracts. First, all plaintiffs allege that they entered into oral or implied contracts for disability benefits when DynCorp recruited them and they began their employment with DynCorp FZ. Second, 12 plaintiffs assert that DynCorp's alleged promise at a 2006 town hall meeting to raise disability benefits from $125,000 to $250,000 formed a separate oral or implied contract between them and DynCorp. DynCorp contends that plaintiffs have no evidence (1) that a valid contract for benefits existed and (2) that DynCorp breached any contract.

A

As a preliminary matter, DynCorp contends that the 12 plaintiffs initially raised the

_____

[11]Because the court is granting summary judgment dismissing plaintiffs' claims for fraud and fraudulent inducement, it denies DynCorp's motion to dismiss Manuel's fraud claims as moot.

theory of a second contract in their response to DynCorp's summary judgment motion, and that the court should therefore disregard it. "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *De Franceschi*, 477 Fed. Appx. at 204 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99, (2009)). "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.* "This rule also encompasses new factual theories supporting previously pleaded legal theories." *Ware v. U.S. Bank Nat. Ass'n*, 131 F.Supp.3d 573, 578 (S.D. Miss. 2015) (collecting cases).

Dyncorp maintains that neither plaintiffs' amended complaint nor Manuel's amended complaint contains any allegation that a new contract was formed after the 2006 town hall meeting. Plaintiffs respond that they specifically pleaded details about the meeting and have discussed it throughout the case, including in depositions and interrogatories.

The court concludes that the 12 plaintiffs' breach of contract claims based on the 2006 town hall meeting should be disregarded. Regardless whether plaintiffs pleaded the factual details of the 2006 town hall meeting, the question is whether they pleaded a claim or theory of liability based on this meeting. *See id.* Neither plaintiffs' nor Manuel's amended complaint asserts such a claim or theory of liability. Rather, plaintiffs appear to rely on the 2006 town hall meeting as evidence that a contract already existed between the parties. *See, e.g.,* Manuel Am. Compl. ¶¶ 21-22 (ECF 136) ("Plaintiffs believed that they were covered for disability benefits to the maximum policy limit of $125,000.00 with the same terms of

Attachment A. . . . Further[] evidencing this belie[f], in a Town hall meeting in 2006, Plaintiffs requested that [DynCorp] address the inequity between their benefits[.]"). Because this claim has not been adequately raised, it is not properly before the court and will be disregarded. *See, e.g., Ware*, 131 F.Supp.3d at 578.

Accordingly, to the extent the 12 plaintiffs base their breach of contract claims on a theory that a new express or implied contract arose out of the 2006 town hall meeting, the court will disregard it. Plaintiffs' claims for breach of contract will be confined to the assertion that they entered into oral or implied contracts with DynCorp when they were initially employed.

B

"Under Texas law, a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law)). For a valid contract to exist, there must be (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, (5) execution and delivery of the contract with the intent that it be mutual and binding, and (6) consideration. *Angelou v. Afr. Overseas Union*, 33 S.W.3d 269, 278 (Tex. App. 2000, no pet.). "In the case of an implied contract, the element of mutual agreement is inferred from the circumstances. . . . and evidenced by the parties' conduct and course of dealing." *E-*

*Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App. 2017, no pet. h.) (internal quotation marks and citations omitted).

C

DynCorp contends on two grounds—which largely replicate the arguments the court discussed *supra* at § IV—that a valid contract for disability benefits did not exist between DynCorp and plaintiffs.[12]

1

First, DynCorp maintains that because plaintiffs signed employment contracts with DynCorp FZ, and because they executed the contracts before they saw the benefits descriptions in Attachment A, plaintiffs are precluded from recovering on any separate contract for benefits with DynCorp. The court disagrees for the same reasons explained *supra* at § IV(A).

DynCorp also argues that plaintiffs cannot rely on communications with "any recruiter they met with in South Africa [who] worked for, or was an agent of, [DynCorp]" as evidence that a contract was formed. D. 10/28/16 Br. 23 (ECF 149). As the court discussed *supra* at § IV(B), DynCorp has failed to shift the summary judgment burden on this issue because

---

[12]In reply, DynCorp also argues that there is no consideration to support a separate contract, maintaining that continued employment with DynCorp FZ cannot be consideration under Texas law. This argument appears to relate only to the alleged contract formed after the 2006 town hall meeting, which the court concludes has not been properly raised. To the extent DynCorp's argument applies to the contract claims that are in the case, the court declines to consider it because DynCorp did not adequately raise the argument in its initial motion. *See supra* note 8.

- 23 -

plaintiffs do not allege that *only* recruiters promised benefits. It is therefore possible and consistent with the allegations of plaintiffs' amended complaint that, in addition to recruiters, someone else acting on DynCorp's behalf represented that employees would receive disability benefits. Accordingly, the court concludes that DynCorp has not shown that it is entitled to summary judgment on this basis.

2

DynCorp also moves for summary judgment on Stanissis' breach of contract claim, contending that she cannot produce sufficient evidence of the existence of a contract between DynCorp and Cavin.[13] According to DynCorp, Stanissis has no knowledge of elements critical to her claim: specifically, his offer letter, benefits discussions, employment agreement, any claims submitted, disability insurance, or even whether he had insurance.

In response, plaintiffs largely concede that Stanissis does not have direct, independent knowledge of an oral contract for benefits.[14] Rather, they maintain that an implied contract existed that can be inferred from Cavin's and DynCorp's behavior. Plaintiffs rely on three arguments for an implied contract. First, they submit that Cavin's filing of a claim for

---

[13]As the court noted *supra* at § V(B), it will consider the arguments set forth in defendants' motion for summary judgment on all claims of certain plaintiffs in addition to those asserted in the motion for summary judgment on each cause of action. Accordingly, unless otherwise noted, citations in this subsection refer to the motion for summary judgment on all claims of certain plaintiffs.

[14]Plaintiffs' response only argues that Stanissis has evidence of an implied contract. Accordingly, plaintiffs have failed to present evidence that would enable a reasonable jury to find that Stanissis can recover for breach of an oral contract.

disability benefits, which DynCorp does not dispute occurred, indicates that DynCorp promised benefits. Second, plaintiffs contend that the existence of a contract between DynCorp and other plaintiffs is indicative that one existed between DynCorp and Cavin. Essentially, plaintiffs posit that if the jury finds that DynCorp promised identical benefits to the other plaintiffs, it is reasonable for the jury to find that DynCorp—as a part of its regular employment process—would have promised the same to Stanissis. And, third, plaintiffs contend that DynCorp's behavior after it allegedly made the contract indicates that it believed a contract had been formed. They point to the 2006 town hall meeting and DynCorp's response to the meeting as evidence of a contract.[15] In a 2007 email, Laura Marr, a Senior HR Manager for DynCorp, wrote that DynCorp requested that the insurance inequity between American and foreign employees be addressed at the end of 2006, but for some reason, it was not processed. In reply, DynCorp contends that this is "record-free conjecture" that "do[es] not attest to Cavin's attendance at any meetings or any representations provided to him[.]" D. 2/10/17 Reply Br. 6-7 (ECF 193).

DynCorp also challenges Stanissis' declaration as contradicting prior deposition testimony. It contends that Stanissis testified at her deposition that she had no knowledge of Cavin's recruitment, terms of employment, or benefits discussions with DynCorp or DynCorp FZ, but she asserts in her declaration that "both Cavin and I relied on this disability

---

[15]Although the court held *supra* at § VII(A) that the 2006 town hall meeting could not serve as the predicate for a separate breach of contract claim, this does not preclude plaintiffs from relying on the meeting to prove that DynCorp believed that it had promised certain benefits when plaintiffs were initially hired.

insurance in case something happened to him." Ps. 12/12/16 App. 289 (ECF 173). DynCorp alleges various other contradictions, none of which is material to the issue here.

The court concludes that there is a genuine issue of material fact concerning whether DynCorp promised Cavin benefits.[16] The court also holds that it need not decide DynCorp's motion to strike Stanissis' declaration because a reasonable jury could find in her favor solely by relying on evidence other than her declaration.

D

DynCorp also contends that plaintiffs cannot show a breach because they "have no evidence that they did not receive the promised coverage. To the contrary, the undisputed evidence shows that . . . it was purchased and provided to them as an employment benefit with [DynCorp FZ]." D. 10/28/16 Br. 23 (ECF 149). Plaintiffs contend in response that DynCorp breached its contract with the all plaintiffs but Stanissis when DynCorp failed to obtain insurance that "would include coverage for all disabilities," as allegedly promised. Ps. 12/9/16 Br. 12 (ECF 169). Plaintiffs allege the breach occurred because plaintiffs' coverage did not apply to mental disabilities, including PTSD.[17] DynCorp does not dispute

---

[16]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[17]DynCorp also argues in reply that plaintiffs' "concession that they received subsequent benefits summaries that superseded and altered benefits summarized in the 2003 Attachment A . . . demonstrates that their claims are untimely as a matter of law." D. 2/10/17 Reply Br. 24 (ECF 192). This argument is insufficient of itself to establish DynCorp's

that the coverage provided did not cover mental disabilities. The court concludes that a reasonable jury could find in plaintiffs' favor on their breach of contract claims, and it denies DynCorp's motion in this respect.[18]

## E

Because DynCorp only challenges the sufficiency of the evidence for the existence and breach of the alleged contracts, and the court concludes that summary judgment is not warranted based on these elements, the court denies DynCorp's motion for summary judgment on plaintiffs' breach of contract claims that are properly before the court.

## VIII

The court turns next to plaintiffs' promissory estoppel claims. In their amended complaint, plaintiffs allege, in pertinent part, that "[DynCorp] (and its agents) promised benefits to Plaintiffs in exchange for their work overseas. . . . [I]t was reasonably forseeable that Plaintiffs would rely on DynCorp['s] promise of personal accident benefits, and Plaintiffs did . . . substantially rely on DynCorp['s] promise[.]" Am. Compl. ¶ 216 (ECF 52).

## A

"Under Texas law, the elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the [promisee]." *Miller v. KFC Corp.*, 1999 WL 820389, at *2 (N.D. Tex. Oct.

_____

limitations defense beyond peradventure.

[18]*See supra* note 16.

- 27 -

13, 1999) (Fitzwater, J.) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996) (Texas law)); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). DynCorp points to the absence of evidence to support each element of plaintiffs' claims. *See* D. 10/28/16 Br. 24-25 (ECF 149).

B

1

For the first element, DynCorp relies on the same arguments that it makes concerning plaintiffs' breach of contract claims: that plaintiffs have no evidence that DynCorp promised them the disability benefits described in Attachment A and cannot prove an actionable promise by DynCorp. *See supra* § VII(C)(1); D. 10/28/16 Br. 24 (ECF 149). Plaintiffs respond that they have submitted evidence, primarily through their declarations, that DynCorp promised that it would provide plaintiffs disability coverage in the case of an injury. DynCorp challenges these statements in its motion to strike, contending that, without explanation, they contradict plaintiffs' prior deposition testimony.

2

A party cannot create a genuine issue of material fact with an affidavit or declaration that impeaches prior testimony without explanation. *Doe* ex rel *Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). In *Doe* the plaintiff in a deposition denied that he had told his principal that a teacher had molested him. *Id.* at 385. Three years later, in a sworn affidavit, the child averred that he *had* told the principal. *Id.* The Fifth Circuit held that the district court correctly disregarded the later affidavit because of the direct conflict

- 28 -

with the prior testimony. *Id.* at 387. When, however, a declaration "merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996). A declaration supplements deposition testimony when it "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition." *Id.*

3

DynCorp maintains generally that every declaration presents new information that plaintiffs did not disclose in their depositions, even though DynCorp asked them if they had disclosed everything about benefits.[19] The court disagrees that new information is subject to being stricken merely because it is new; it must contradict, not supplement, plaintiffs' sworn testimony. *See id.* at 496.

DynCorp also identifies specific contradictions between some plaintiffs' depositions and their declarations.[20] DynCorp contends that Louw, Manuel, and Potgieter allege new facts about their benefits discussions with DynCorp representatives that contradict their declarations.

-------------------------------------------------

[19]For example, DynCorp maintains that "Botes confirmed unequivocally in deposition [that he gave] all of the information that he had about his benefits as a DynCorp employee." D. 1/4/17 Br. 12 (ECF 176). DynCorp's motion contains similar arguments for every plaintiff.

[20]In its motion to strike, DynCorp identifies several contradictions. The court need only discuss the ones that it has determined are related to whether DynCorp employees or agents promised plaintiffs benefits.

Louw avers in her declaration that Gill explained insurance benefits to her, including a potential increase in benefits. DynCorp argues that this contradicts two aspects of Louw's deposition. First, Louw only testified that a DynCorp FZ employee explained the benefits to her. But testifying that a DynCorp FZ employee explained benefits to her does not mean that someone else could not also have explained benefits to her. DynCorp also asked Louw whether she had any discussions with Gill, and she responded that she typically just said "hello." But Louw's testimony about typical interactions with Gill is not incompatible with Gill's explaining benefits to her. The court concludes that DynCorp has not shown that Louw's declaration contradicts, rather than supplements, her deposition.

DynCorp challenges Manuel's declaration, contending that his statements about discussions of benefits with DynCorp employees contradict his prior testimony that he could not recall when he had any discussions of benefits. The court disagrees with DynCorp's reading of Manuel's deposition testimony. During the deposition, following questions related to what happened after Manuel landed in Iraq, DynCorp's counsel asked Manuel this question: "At what point did you have any discussions of employment benefits or sign any employment contract or receive any documents about your employment?" D. 1/4/17 App. 464-65 (ECF 176-1). Manuel responded: "I do not recall very well." *Id.* at 465. DynCorp's counsel did not follow up on this answer by inquiring what Manuel meant by "recall very well," or focus on what part of the question—discussions of employment benefits, or signing an employment contract, and/or receiving any documents about his employment—Manuel did not recall very well. Moreover, the question did not ask *whether* Manuel had discussions

of employment benefits, or signed an employment contract, and/or received any documents about his employment, but *at what point* did any of these events occur. It would not be contradictory for Manuel not to be able to recall very well at his deposition *when* something occurred, but be able to recall later that something *did* occur and remember *what* occurred.

Last, DynCorp contends that Potgieter has contradicted his deposition testimony in multiple ways. It argues that Potgieter testified that he did not discuss benefits with his colleague, Varney Cauley ("Cauley"), but later asserts that he did. Potgieter also testified that his first discussion of benefits was with a female HR employee when he signed his employment contract, and that he spoke with no one else regarding benefits throughout his employment. DynCorp contends this is contradicted by numerous declaration statements, including his discussion with Cauley.

Even if the court assumes *arguendo* that these statements contradict Potgieter's deposition testimony, they are immaterial to his claims. The critical aspect of Potgieter's testimony—that a DynCorp HR employee discussed benefits with him—remained unchanged from his deposition to the declaration. Because none of the alleged contradictions would require the court strike this evidence of an essential element of his claim, the court need not decide whether to disregard the averments of his declaration.

4

Having overruled DynCorp's objections to and motion to strike plaintiffs' declarations, the court concludes that DynCorp is not entitled to dismissal of plaintiffs' promissory estoppel claims based on their failure to raise a material fact issue as to the first

element.

C

For the second element, DynCorp contends that reliance was not foreseeable because "any promisor Plaintiffs could identify would have known that Plaintiffs would sign an employment contract with [DynCorp FZ], and the disability benefits provided by their employer would be identified in connection with those contracts." D. 10/28/16 Br. 25 (ECF 149). Plaintiffs respond by offering two reasons why reliance was foreseeable: (1) the promise was intended to induce plaintiffs to stay in Iraq and work for DynCorp, and (2) plaintiffs specifically emphasized the importance of disability coverage at the 2006 town hall meeting.

The court holds *supra* at § VII(A) that plaintiffs' breach of contract claim based on an alleged express or implied contract created at the 2006 town hall meeting is not properly before the court and will be disregarded. But it does not follow that evidence concerning what occurred at the town hall meeting, and similar evidence, cannot be used as proof of foreseeability. *See also supra* note 15 (stating that plaintiffs can rely on evidence regarding the 2006 town hall meeting to prove that DynCorp believed it had promised certain benefits when plaintiffs were initially hired). The court concludes that a genuine issue of material fact exists as to the second element of plaintiffs' promissory estoppel claims.[21]

---

[21]*See supra* note 16.

D

DynCorp contends that plaintiffs cannot satisfy the third element because "there is no evidence that Plaintiffs signed offer letters undertaking their employment in reliance on the promise of disability benefits by [DynCorp]." D. 10/28/16 Br. 25 (ECF 149).

1

DynCorp's argument appears to be premised on an assertion that it repeats throughout the briefing: Any representation must have been made before plaintiffs signed offer letters for plaintiffs to prove reliance or consideration. *See, e.g., id.* ("Plaintiffs must identify pre-employment promises on which they relied. The limited pre-employment promises to which Plaintiffs testified were those made 1) by [DynCorp FZ] in Plaintiffs' offer letters or 2) by recruiters that were neither employees nor agents of [DynCorp]."); D. 10/28/16 Br. 13-14 (ECF 147) ("Plaintiffs' signing of their offer letters precludes any assertion that they relied on the disability benefits descriptions in the May 12, 2003 Attachment A benefits summary in accepting employment."). Plaintiffs contend that they made their employment decisions based on the alleged promise for benefits. *See, e.g.*, Am. Compl. ¶ 5 (ECF 52) ("The [Benefits] Plan, including but not limited to the assurance that their salary losses would be covered in the event of a serious injury, was a significant inducement to Plaintiffs' decision to go to work in an overseas danger zone[.]"). DynCorp maintains that plaintiffs made their decisions when they signed their offer letters. It therefore posits that if plaintiffs do not have evidence of a promise made *before* they signed their offer letters, they have not adduced evidence of reliance. Neither side adequately briefs this issue—rather, they essentially

assume their respective positions throughout the briefing. The court therefore concludes that there is a genuine issue of material fact regarding whether plaintiffs' employment decisions were made when they signed the offer letters or the employment contracts.[22]

2

The court next considers whether plaintiffs have submitted evidence of reliance that would enable a reasonable jury to find that plaintiffs did not make employment decisions until they signed their contracts. All but two plaintiffs—Delport and Stanissis[23]—aver that they relied on DynCorp's alleged promise when signing their employment contracts. *See, e.g.*, Ps. 12/12/16 App. 89 (ECF 173) (A. Cronje Decl. ¶ 7) ("Relying on [the promise for benefits by DynCorp], I then signed an employment agreement with DynCorp FZ on October 14, 2004[.]").

Delport cannot demonstrate that he detrimentally relied on the alleged promise. Delport avers that he signed his employment agreement with DynCorp FZ on February 2, 2007. But in the same declaration, he states that DynCorp HR employees did not explain benefits until February 17, 2007 at the earliest. Accordingly, the court concludes that a reasonable jury could not find in Delport's favor on his promissory estoppel claim.

DynCorp contends in its motion to strike that the declaration of one plaintiff (Manuel) contradicts his deposition testimony. D. 1/4/17 Br. 36 (ECF 176). The court has explained

_____

[22]*See supra* note 16.

[23]The court will analyze Stanissis' claim *infra* at § VIII(E).

above why this contention lacks force.  *See supra* § VIII(B)(3).  DynCorp does not contest any other plaintiff's evidence.[24]  Accordingly, the court concludes that a reasonable jury could find in favor of all plaintiffs except Delport on their promissory estoppel claims.

E

DynCorp separately argues that Stanissis has no evidence to prove any of the elements of her promissory estoppel claim.[25]  The court will assume *arguendo* that plaintiffs have created genuine facts issues as to the first and second elements.  As to the third element, however, the court holds that plaintiffs have failed to satisfy their summary judgment burden.

DynCorp has pointed to the absence of evidence of detrimental reliance.  As DynCorp notes in its reply brief, plaintiffs in their response merely "speculate why Cavin continued to work in Iraq and simply state that he detrimentally relied on [DynCorp's] promise, all without any cited evidence."  D. 2/10/17 Reply Br. 10 (ECF 193).  Plaintiffs have failed to submit evidence that would enable a reasonable jury to find that Cavin relied on an alleged promise of benefits when he signed his employment contract.  Accordingly, the court grants DynCorp's motion for summary judgment as to Stanissis' promissory estoppel claim.

---

[24]DynCorp contests multiple plaintiffs' statements that they relied on Attachment A benefits because they testified in their deposition that they had not seen or did not remember seeing Attachment A.  The court has addressed and rejected this argument *supra* at § V(A).

[25]This subsection considers arguments from DynCorp's motion for summary judgment on all claims of certain plaintiffs.

IX

The court next considers plaintiffs' claims for breach of duty of good faith and fair dealing as a self-insurer.

A

"Under Texas law, there is a duty on the part of an insurer to deal fairly and in good faith with an insured in processing and paying claims. This duty arises from the inherent power imbalance between the insurer and the insured." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 806 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). Courts apply the duty of good faith and fair dealing narrowly and have refused to extend it to non-insurance contexts. *Melanson v. Navistar, Inc.*, 2014 WL 4375715, at *11 n.12 (N.D. Tex. Sept. 4, 2014) (Fitzwater, C.J.).

"[A]n insurer breaches its common law duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered." *Nunn*, 729 F.Supp.2d at 806 (quoting *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744, 747 (5th Cir. 2009) (per curiam) (Texas law)) (internal quotations, citations, and alterations omitted). To establish a breach of the duty, plaintiffs must prove "(1) the absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) that the insurer knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994) (citing *Aranda v. Ins. Co. of N.A.*, 748 S.W.2d 210 (Tex. 1988), *overruled on other grounds by Tex. Mut. Ins. Co. v.*

*Ruttiger*, 381 S.W.3d 430 (Tex. 2012)). "Within the duty of good faith is an insurer's obligation to conduct an adequate investigation of the claim." *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F.Supp.2d 814, 839 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 469 (Tex. App. 2005, no pet.)). And a company that self-insures benefit plans for employees may be subject to this duty as if it were an insurer. *E–Z Mart Stores, Inc. v. Hale*, 883 S.W.2d 695, 700 (Tex. App. 1994, writ denied).

## B

DynCorp contends that plaintiffs have no evidence that DynCorp is an insurer subject to the duty of good faith and fair dealing. It posits that plaintiffs cannot show that it ever chose to self-insure its employees' policies, including the benefits at issue in this case, and that plaintiffs have no evidence that DynCorp acted unfairly or that it breached its duty. According to DynCorp, 15 of the 19 plaintiffs asserting this claim never filed a claim for accidental death or disability benefits, so DynCorp had no opportunity to deny or delay payment for their claims. And for the other four plaintiffs who submitted claims, three claims were submitted after plaintiffs filed this lawsuit. Three of the four claims were denied, and DynCorp contends that plaintiffs have no evidence that it acted unreasonably in denying these claims.

Plaintiffs respond that DynCorp breached its duty not by denying any particular

claim,[26] but by "eliminat[ing] Plaintiffs' coverage entirely without even informing the Plaintiffs. . . . [and] misrepresent[ing] to Plaintiffs that their coverage remained 'unchanged.'" Ps. 12/9/16 Br. 26 (ECF 169). Plaintiffs cite *Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994), in which the Supreme Court of Texas held that "a cause of action for breach of the duty of good faith and fair dealing exists when the insurer wrongfully cancels an insurance policy without a reasonable basis." *Id.* at 283. This cause of action "is stated by alleging that the insurer had no reasonable basis for the cancellation of the policy and that the insurer knew or should have known of that fact." *Id.* In *Shelton* the insurance company issued a health policy in April 1988. *Id.* at 279. After the insured underwent a hip replacement surgery to correct necrosis and filed a claim, the company concluded that the necrosis was an undisclosed pre-existing condition. *Id.* The company asked the insured to sign a document acknowledging his preexisting condition and disclaim all claims related to the necrosis. *Id.* When he refused, the company canceled the entire insurance policy. *Id.* After holding that cancellation of a policy may be a breach of the duty of good faith and fair dealing, the court remanded to the trial court for a determination of bad faith, which if shown would establish a breach. *Id.* at 284.

Plaintiffs incorporate arguments from their breach of contract claim, and they appear to argue that DynCorp eliminated plaintiffs' coverage when it "failed to obtain any insurance for the plan from 2005 to 2008." Ps. 12/9/16 Br. 14 (ECF 169); *see id.* at 24 ("Indeed, this

---

[26]Plaintiffs have abandoned any contention that DynCorp unreasonably denied a claim.

elimination lasted from 2005 to 2008.").  But plaintiffs' theory is inconsistent with their

contention that DynCorp self-insured the Attachment A benefits, which is an essential

element of their breach of duty claim.  If DynCorp self-insured the plan, this means that it

intended to pay claims from its own funds;[27] it is therefore irrelevant that it "failed to obtain"

third-party insurance.

Because plaintiffs' theory cannot establish that DynCorp both self-insured the plan

and unreasonably canceled the plan, the court grants DynCorp's motion for summary

judgment dismissing plaintiffs' claims for breach of the duty of good faith and fair dealing.

X

DynCorp moves for partial summary judgment on damages, contending that it is

entitled to summary judgment (1) that damages are capped at the maximum amount of each

plaintiff's potential disability benefits claim under Attachment A; (2) that under Tex. Civ.

Prac. & Rem. Code Ann. § 38.001, plaintiffs cannot recover attorney's fees from DynCorp,

which is an LLC; (3) that plaintiffs cannot recover extra-contractual damages; and (4) that

plaintiffs cannot recover punitive damages.

Plaintiffs concede that this court has interpreted § 38.001 to preclude recovery of

attorney's fees from an LLC.  *See, e.g.*, *Siwell, Inc. v. Leverage Fin., LLC*, 2017 WL

1397818, at *2 (N.D. Tex. Apr. 18, 2017) (Fitzwater, J.) (citing *Hoffman v. L&M Arts*, 2015

---

[27]*See E–Z Mart*, 883 S.W.2d at 699 (noting that under E–Z Mart's self-insurance
program "the corporation created and funded its own program to provide benefits parallel to
those provided under the Workers' Compensation Act.").

WL 1000838 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.), *aff'd in part*, *rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016)). The court therefore grants DynCorp's motion for summary judgment on this issue.

The court, in its discretion, declines to consider DynCorp's motion to limit damages. Depending on the jury verdict, these grounds of DynCorp's motion may become moot.[28]

\* \* \*

In sum, the court grants in part some of DynCorp's motions for summary judgment and dismisses all plaintiffs' claims for fraud and fraudulent inducement and breach of the duty of good faith and fair dealing; dismisses the breach of contract claims of 12 plaintiffs to the extent they base the claims on a theory that a new express or implied contract arose out of the 2006 town hall meeting; dismisses the promissory estoppel claims of Stanissis and Delport; and dismisses plaintiffs' claims for attorney's fees. The court otherwise denies DynCorp's summary judgment motions, and it denies DynCorp's motion to dismiss Manuel's fraud claims as moot.

Plaintiffs' claims for breach of contract (except to the extent they base the claims on a theory that a new express or implied contract arose out of the 2006 town hall meeting) and

---

[28]Although the part of the motion that addresses attorney's fees could also become moot, it is easily decided as a matter of law under this court's precedents.

for promissory estoppel (except as to Stanissis and Delport) remain for trial.

**SO ORDERED**.

August 2, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE